Darrah *v.* Jones & Laughlin Steel Corporation,
Appellant.

Argued October 6, 1959. Before Jones, C. J., Bell, Jones, Cohen, Bok and McBride, JJ.

*Hamilton A. Robinson,* with him *Clifford J. Koerth,* and *Dickie, McCamey, Chilcote & Robinson,* for appellant.

*Dennis C. Harrington,* with him *McArdle, Harrington & McLaughlin,* for appellee.

Opinion by Mr. Justice McBride, November 9, 1959:

This is an appeal in a personal injury case in which the defendant says it was not negligent and the plaintiff was. Since the plaintiff won the jury verdict we must read the record in the light most favorable to

him. It would appear that the jury could have found the following facts:

Jones & Laughlin Steel Corporation entered into a contract with United Engineering and Foundry Company for the installation of a new rod mill and a hook conveyor leading to the east bay of the old rod mill. One of the subcontractors to United was Courtney Electric Company for whom the plaintiff, Darrah, was an electrician. Darrah had worked at various jobs at the Jones & Laughlin plant commencing in October, 1952, and the electrical work he was doing there was about completed except for the installation of some conduits, welding of brackets and some painting. Several days prior to November 24, 1952, Darrah and Ecklund, a welder, had been welding and painting brackets for the conduit in the east bay of the old rod mill. While the work was going on, the old rod mill was in full production and the moving machinery created a hazard to Darrah and any others who were engaged in the work being done by United and its subcontractor, Courtney. With knowledge of this fact, Jones & Laughlin had undertaken to provide additional protection for these employees, particularly when they were working around cranes. At least one safety meeting was held prior to November 24, 1952, which meeting was attended by the Courtney employees. At that meeting Samuel McNaugher, referred to frequently throughout the record as "Safety Sam", promised Courtney employees that "Safety men will be supplied by J. & L. when cranes are involved."

On the morning of the accident, at about 8:00 o'clock, Darrah and Ecklund had gone up on a ladder to paint brackets. Thereafter Ecklund left and Darrah was finishing the painting when he decided to come down again. The cab of the crane involved in the accident was located on the west side of the runway and

was permanently attached. It was energized by electric current on the "hot" rail on the east side of the bay. The crane had not moved between the time Darrah went to work and two hours later when he started to descend.

The ladder used by Darrah and Ecklund protruded out into the center bay 6 to 8 feet and was in clear view of the crane operator for at least two hours before the accident happened. The same ladder, at its uppermost extent, passed within inches of the crane rail. After reaching the beam, from which he was to step onto the ladder for the final part of his descent, Darrah looked toward the crane and saw no sign of activity. The crane was stationary with all signal lights out. He placed his foot on the second or third rung of the ladder to commence his descent. He had his paint bucket in his right hand. The ladder "levelled" itself and instinctively plaintiff put out his left hand to steady himself. The first solid resting place against which his hand could come to rest was the crane rail which was at the level of his shoulder as he stood on the ladder. At the same instant, the southeast crane wheel rolled up onto plaintiff's hand and stopped. The safety man promised by "Safety Sam" was not there. Testimony from all of the witnesses leaves no doubt that the crane was equipped with a warning device, either a bell or a siren. The purpose of the device was to announce the approach of the crane to all who might be in the way. No warning was given, no bell was rung, no siren sounded, to notify plaintiff of the approaching crane. If such device had been used, Darrah would have had the opportunity to maintain his place of comparative safety clear of the moving wheels of the crane. No explanation was offered as to why no warning was sounded. The crane then moved away off the plaintiff's hand in a northwardly direction.

Plaintiff descended the ladder and eventually made his way to the first aid station. Two of his fingers were cut off and one was fractured.

The facts of this case are strikingly similar to that of *Kakias v. United States Steel Company,* 214 F. 2d 434. In *Kakias,* on the basis of Pennsylvania law the evidence was held sufficient to warrant the jury in concluding that defendant's agents were perfectly aware where plaintiff was working and that it owed him the duty, prior to moving its crane so as to endanger him, to give him notice. So, here, Darrah was not merely a gratuitous licensee to whom no greater duty was owed than to give warning of dangers which were known, *Miller v. Philadelphia,* 345 Pa. 1, 25 A. 2d 185; *Pieckowicz v. Oliver Iron & Steel Co.,* 351 Pa. 209, 40 A. 2d 416; he was a business visitor to whom was owed the duty of keeping the premises in a reasonably safe condition in which to work. *Stimmel v. Kerr,* 394 Pa. 609, 148 A. 2d 232; *Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1, 130 A. 2d 123. The danger to Darrah was not only reasonably foreseeable, it was obvious. Indeed, the accident occurred because of the *active* negligent conduct of defendant's agent in failing to give Darrah warning of the operation of the crane either by posting the watchman, as promised, or sounding of a bell or other warning device.

Defendant also contends that plaintiff was himself negligent and cites *Lowry v. Baldwin Locomotive Works,* 253 Pa. 87, 97 Atl. 1049. That case is distinguishable from the present. In *Lowry,* the plaintiff himself adduced evidence to show the crane had been traveling up and down the shop every five or ten minutes on the morning of the accident. Here it had not been operated at all. In *Lowry,* the crane operator was not aware that the girder was being painted. Here it was obvious to anyone who took the trouble to look

that Darrah was working there and had been for two days prior thereto. In *Lowry,* there was no evidence that anyone on behalf of the defendant company had undertaken to warn plaintiff of the approach of the crane. Here, the direct testimony of plaintiff was that he and others had been promised that such warning would be given. There is no evidence that Darrah violated any rule or regulation of the defendant company. A duty to make the premises reasonably safe for business visitors or to warn them of the dangerous condition existing or about to occur by the operation of machinery was not honored. True it is that when he attempted to descend the ladder it "levelled" and that it was an instinctive act on his part to make him grasp at the rail at which the crane was operated. It must be remembered, however, that when he commenced to descend the ladder the crane was not in operation, and suddenly, without warning, it moved forward. The need to grasp something to steady the ladder does not constitute an act of contributory negligence such as would warrant us in declaring it to be so as a matter of law.

Finally, defendant contends that the accident, as described by the plaintiff, was a physical impossibility. There appears no valid reason why the accident could not have happened as described. This is not a case for the application of the incontrovertible evidence rule. See *Middleton v. Glenn,* 393 Pa. 360, 143 A. 2d 14.

We cannot say, as a matter of law, that the jury was compelled to find either that the defendant company was not negligent or that plaintiff was himself contributorily negligent. The jury was warranted, but not required, to find as it did. The case was fairly tried; no errors in the admission of evidence or the charge of the court are complained of; and the judgment will be affirmed.

Affirmed.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.