# Richmond

SOUTHERN STATES GRAIN MARKETING COOPERATIVE, INCORPORATED, AND O. R. PUCCINELLI, JR., AN INFANT v. CHARLES S. GARBER.

January 18, 1965.

Record No. 5857.

Present, Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Travis W. Poole (Jack B. Russell; Browder, Russell & Morris; Poole, Moncure & Thompson,* on brief), for the plaintiffs in error.

*John Paul Causey (Sutton & Causey,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Charles S. Garber instituted this action against Southern States Grain Marketing Cooperative, Incorporated, Cooperative Mills, In-

corporated, and O. R. Puccinelli, Jr., an infant, to recover damages for personal injuries, alleged to have been sustained by the plaintiff by reason of the negligence of defendants in maintaining unsafe premises, and by the negligent operation of a lift or hoist mechanism, while the plaintiff was an invitee on said premises. The corporations, and Puccinelli, by his duly appointed guardian *ad litem*, filed grounds of defense denying negligence on their part and charging that Garber was guilty of contributory negligence.

At the conclusion of the evidence on behalf of the plaintiff, the trial judge sustained a motion to strike the plaintiff's evidence with respect to the allegation of unsafe premises. Cooperative Mills, Incorporated, was thereupon dismissed as a defendant, since that was the only allegation directed against it. The court then overruled the motion with respect to the allegation that the two remaining defendants were negligent in the operation of the hoist mechanism on the premises. The case then proceeded against those two defendants, hereinafter referred to as appellants.

At the conclusion of all the evidence, the court overruled the motion of appellants to strike it on the ground that it failed to show primary negligence on their part, but showed instead that Garber was guilty of contributory negligence as a matter of law.

There were only two witnesses as to how and why Garber was injured, the plaintiff, himself, and the defendant, Puccinelli. Their evidence is conflicting in almost every respect on all material points.

The jury having found in favor of the plaintiff, the facts will be stated in the light most favorable to him. *Bond v. Joyner*, 205 Va. 292, 294, 136 S. E. 2d 903.

Southern States Grain Marketing Cooperative, Incorporated, operates a grain storage and distribution center on premises leased by it from Cooperative Mills, Incorporated, in the city of Richmond, Virginia. On the premises is a building in which is located a pit covered with iron grating, into which grains are dumped from the rear of unloading trucks. Adjoining and beyond the pit, there is a wooden cradle on which the front wheels of a truck are driven for unloading purposes, after the truck and its contents have been weighed. The cradle is 12 feet in length and 4 feet in width. Attached to the cradle is a hoist mechanism which consists of two suspended wire cables, one on each side, threaded through pulleys. One end of each of the cables is attached permanently to an overhead girder, while the other end is attached to a drum. The lift or hoist is operated by electricity controlled by an activating switch located in the

building to the right rear of a truck being unloaded. When the lift control is activated, the cables pass slowly through the pulleys, and as one end of each of the cables is permanently attached, and the other revolves around a drum, the front of the cradle is raised to elevate the front end of the truck so that when its tailgate is opened, the contents of the truck slide into the grain pit.

Between 7:00 and 7:30 a. m., on July 7, 1960, Garber, a forty-four-year-old farmer, driving a truck with a "solid board, tongue and groove body," 4 feet in height above the frame of the truck, brought a load of wheat to the grainery of the Marketing Cooperative. At the direction of Puccinelli, an employee of Grain Marketing Co-operative, he drove his truck on the cradle. He then got out of the left side of the truck, went around its front to the weighing scales on the right side. After observing the weighing of the truck and its contents, he and Puccinelli both walked around the front of the truck to its left side. Garber, thinking the truck had, perhaps, gone too far ahead to permit proper dumping of its contents, asked Puccinelli if it should be backed on the cradle, and Puccinelli replied: "No, hold the cable." Puccinelli then went past the rear of the truck to the place where the lift control switch was located. From this position he could not see Garber at the left front of the truck, nor could Garber see him. However, Puccinelli, without giving any warning to Garber, turned on the control switch and the truck had barely cleared the floor, when the pulley on the cable which Garber was holding came up and caught Garber's fingers between it and the cable causing the injuries complained of.

Garber said that the cables hung loosely when not in operation, sometimes striking the side of a truck in the cradle; that he thought Puccinelli meant that he should hold the cable to keep it from hitting the truck, if it should roll backwards when its front end was lifted; that he did as he was told; and that within a few seconds and without warning, the lift mechanism was activated by Puccinelli while he was holding the cable.

Garber explained that, at the time his fingers were caught by the pulley, he was facing the truck and looking toward its rear wheels; that while he knew the operator was going to lift the front of his truck a little, he didn't know or think that he was going to move the cable or pulley without giving him a warning; and that when his hand was caught in the pulley, he yelled, and Puccinelli stopped the mechanism.

It appeared that the cables had been moved so strongly by Puccinelli

at the time of the accident that it required the services of a mechanic to put the hoist back into operation.

Puccinelli denied that he told Garber to hold the cable. He said that he did not warn Garber that the mechanism would be activated, nor did he know that the latter was in a dangerous situation until he heard the screams.

The jury was fully and fairly instructed on all material issues. The instructions defined preponderance of the evidence, negligence, contributory negligence, reasonable care, what the plaintiff was required to prove to entitle him to a recovery, and the burden of proof necessary to establish contributory negligence. Instructions refused were either not applicable to the facts of the case, or were covered by instructions given. The jury returned a verdict for the plaintiff in the sum of $10,400.00, and the amount thereof is not in question.

Thus, the two questions presented for our decision are: (1) whether the evidence was sufficient to sustain the jury's finding of negligence on the part of Puccinelli; and, (2) whether Garber was guilty of contributory negligence as a matter of law.

The main contention of appellants, however, is directed to the question of plaintiff's contributory negligence, the primary negligence of the appellants being implied by their plea of contributory negligence.

Appellants contend that Garber was negligent in holding the cable without looking at it or his hand; that he should have heard the noise of the lift mechanism being activated, observed the movement of the cable and pulley and that the front end of his truck was being elevated; and that consequently the negligence of Puccinelli, if any, was not the efficient, proximate cause of plaintiff's injuries.

This contention overlooks the evidence and the finding of the jury accepting the testimony of Garber. It is conceded that neither the premises nor the machinery was inherently dangerous. The only thing which made the situation dangerous to Garber was the command of Puccinelli to Garber to "hold the cable," and the subsequent activation of the machinery by Puccinelli without notice to Garber. Garber did as he was told. Puccinelli, on activating the hoist without warning Garber, failed to exercise reasonable care. Puccinelli was charged with knowledge of the instruction he gave to Garber, and that Garber was obeying that instruction. He was familiar with the operation of the lift. He knew, or ought to have known, that to start the movement of the hoist mechanism with

Garber holding one of the cables would create a situation dangerous to the latter.

Garber had the right to assume that Puccinelli would exercise due and reasonable care under the circumstances. He is not chargeable with negligence because he did what Puccinelli, the employee in charge of machinery, told him to do. Nor was it required of him to foresee that Puccinelli would place him in a position of danger as a result of carrying out the latter's directions. The defendants' liability here is determined by what occurred between Garber and Puccinelli. The consequences, in the light of the attendant circumstances, might readily have been anticipated by a reasonably prudent man. Cf. *Balderson* v. *Robertson, Adm'r*, 203 Va. 484, 487, 488, 125 S. E. 2d 180.

No Virginia case involving the precise facts has been cited to us, nor have we found any. The rule of law in such a case as this is well stated in Restatement of Torts, § 341, as follows:

"A possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein."

In *Standard Oil Company* v. *Wakefield*, 102 Va. 824, 832, 47 S. E. 830, we approved the following statement:

"* * * (W)henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury."

The circumstances here are in some respects similar to those in *Darrah* v. *Jones & Laughlin Steel Corporation*, 397 Pa. 334, 155 A. 2d 201. Darrah was the employee of a contractor engaged in painting a mill of the defendant, remaining in full production during the job. Moving machinery constituted the hazard. Darrah, coming down a ladder, put his hand on a rail, and his hand was struck by a crane which moved along the rail without warning. The court held that the defendant was negligent in not warning Darrah of the operation of the crane.

See also *Kakias* v. *United States Steel Company*, 214 F. 2d 434.

where plaintiff had crawled under a conveyor belt, when it was not moving, in order to paint it, and the belt was thereafter started up without warning, injuring the plaintiff, the court holding, under the facts stated in that case, that the defendant was negligent in not giving to Kakias notice prior to moving the belt.

Here, likewise, the negligence upon which the judgment against Puccinelli is predicated is his active negligence in failing to give notice to the plaintiff, a failure which transformed a safe situation into one of danger.

Questions of negligence and contributory negligence were for the jury. There was nothing incredible about Garber's testimony. The jury were properly instructed; they accepted Garber's version of the accident; and the learned and experienced trial judge has approved the verdict, and we cannot disturb it.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*