McKown *v.* Demmler Properties, Inc., Appellant.

Argued October 6, 1965. Before Bell, C. J., Mus-manno, Jones, Eagen and O'Brien, JJ.

reargument refused December 16, 1965.

*William C. Walker,* with him *Dickie, McCamey & Chilcote,* for appellant.

*Paul E. Moses,* with him *Robert B. Ivory,* and *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1965:

Thomas A. McKown, Jr., the plaintiff in this case, was injured when he walked into a building at 100 Ross Street in Pittsburgh, owned by Demmler Properties, Inc., the defendant, and fell. He brought suit in trespass against Demmler* and recovered a verdict of $15,000. He moved for a new trial on the basis that the verdict was inadequate. The defendant moved for judgment n.o.v. The trial court ordered a new trial and refused judgment n.o.v. The defendant appealed.

The plaintiff McKown was a painting estimator employed by a Neiser Company which had done some work for John Schurko, president of the Hende-Jon Furniture Showrooms, Inc., which was negotiating with Demmler, owner of the building on 100 Ross Street, to lease the building and possibly later purchase it. Having ascertained from the telephone book that Schurko had offices in the Demmler Building (we will so refer to it), he went there on October 1, 1959, to talk with Schurko. He entered through a door on Ross Street and noted that he was in a loading area with a loading platform to the rear. The area was partially lit up by

---

* He also included as defendants, Hende-Jon Furniture Showrooms and John Schurko but they were absolved of fault by the jury and, therefore, do not figure in the appeal.

an electric bulb and by light coming through a window and fire doors. The lower court describes in the following language what happened: "While the lighting furnished by the above sources prevented the area from being in pitch darkness, the light was dim and because of shadows, misleading or deceptive. After allowing his eyes to adjust to the dimness of the loading area, plaintiff proceeded toward the window, bearing somewhat to his right. He was watching the floor where he was going and he thought he could see but was deceived. After proceeding some six feet, he fell off the edge of the offset. Plaintiff had never been in the building before. He knew that the platform narrowed somewhere ahead and, quite properly, was looking for the offset when the accident occurred. He testified that conditions were such that: 'I thought I could see where I was going but I couldn't'."

It is the contention of the defendant that the plaintiff was a trespasser or, at best, a gratuitous licensee and as such the defendant violated no duty owing to him. It points out that Schurko did not in fact have an office in the building. (He was to move in later although McKown did not know this.) But this cannot make McKown a trespasser if he had every reason to believe Schurko actually was in the building. There would be no occasion for McKown to conclude that the telephone company and Schurko, together with Demmler, were in conspiracy to deceive him as to the whereabouts of Schurko.

McKown was not a trespasser. He was legitimately on the premises, not only for the purpose of seeing Schurko but also to look over the building itself since he intended to solicit work in connection with the remodeling of the building by Hende-Jon Furniture Showrooms, Inc. As a business visitor McKown had the right to expect that he would not be injured as a result of affirmative negligence on the part of the de-

fendant. The defendant knew of latent defects in the Demmler Building but made no effort to warn lawful visitors of what to expect. In that failure it was liable for injuries resulting from those defects. (*Matthews v. Spiegel,* 385 Pa. 203.)

The defendant urges that by proceeding forward in a dim light McKown was guilty of contributory negligence. What McKown did was not so opposed to common prudence that he could be declared guilty of contributory negligence as a matter of law. It is true that a more cautious person might have hesitated to go forward when he was not absolutely positive of what lay ahead or beneath his feet. On the other hand if all mankind depended on those who ask for a guarantee of security with each footstep, there would be little progress in the world. There is scarcely a task that does not present some obstacle to overcome and some darkness to penetrate.

The darkness here was not so engulfing as to command immobility. McKown was reasonably justified in assuming that, with care appropriate to the circumstances, he could reach his destination without mishap. Whether his boldness exceeded good judgment was a matter of determination by the jury. In *Slobodzian v. Beighley,* 401 Pa. 520, this Court stated: " 'The question of Plaintiff's contributory negligence was undoubtedly for the jury. There is a multitude of cases of this type to be found in the reports, but they necessarily depend largely upon their individual facts. However, analysis would seem to justify their classification into two groups. There are those in which a person wanders around in a place absolutely dark and where, though not a trespasser, there is no reasonable necessity for his presence. In such cases recovery is denied . . . There are other cases where there is some fairly compelling reason for walking in a place which, though dark, is not utterly devoid of light. Under such circumstances, contributory negligence will not be de-

clared as a matter of law . . . It may be stated, therefore, that the controlling factors in determining the question of contributory negligence in accident cases of this nature are the degree of darkness and the justification for the injured person's presence in the place of danger.' "

In the case of *Falen v. Monessen Amusement Co.*, 363 Pa. 168, 171, where the facts were not wholly dissimilar from the ones in the case at bar, we said: "Between light and darkness there are varying degrees or shades of light whereunder a question of contributory negligence, because of a failure to see distinctly, necessarily becomes a matter for a jury to determine. . . . Here, the jury was warranted in finding that, while the light was sufficient to enable Mrs. Falen to see, and that she did see, it was also so dim as to deceive her into mistaking the top of the retaining wall for the curb of the sidewalk. . . . Under the evidence in the case, the jury was justified in finding that Mrs. Falen had a 'fairly compelling reason for walking in a place which, though dark, [was] not utterly devoid of light'."

The facts, as revealed by the printed record, negative any conclusion that McKown blindly plunged forward in darkness. He proceeded carefully but he was deceived as to the configuration of the platform on which he trod. Chief Justice MAXEY, in addressing himself to a situation of this kind, declared in *Bailey v. Alexander Realty Co.*, 342 Pa. 362, 368: "If in semi-darkness he uses his sense of sight as carefully as he can and reasonably believes he can 'see his way' and if his sense of sight deceives him, he may or may not be guilty of negligence and the question will be for the jury."

Motion for a New Trial

At the time of the accident which is the subject of this lawsuit, Louis F. Demmler was president of Demm-

ler Properties, Inc. When he was called to the witness stand, the trial judge hailed him familiarly by his first name, declaring "How are you, Lou?" He then turned to the jury and said, undoubtedly radiantly: "Ladies and Gentlemen, Mr. Demmler and I are very old friends. We have officiated together at many a football game, many a game."

This warm amiable exchange, in full view of the jury, between a party in the case and the trial judge, was as unfortunate as it was inevitable. This Court, or, at any rate the writer of this Opinion, can take judicial notice of the fact that the trial judge who, in addition to being a veteran able judge, has been an equally able Congressman and football referee, is a person of impulsive and ebullient friendliness. Having known Louis Demmler in sports, where the feeling of camaraderie which develops is almost equivalent in intensity to that which is engendered between comrades in war, it was almost impossible for the judge not to have effusively greeted his football companion with whom he had refereed many an exciting gridiron clash.

The judge, however, later realized that his demonstration of affable comradeship in court might cause jurors to don the same cloak of fellowship toward Mr. Demmler and thereby moderate their judgment with regard to his answerability in the lawsuit of which he was the defendant. This, the judge reflected, might tilt the scales of justice unfairly and so he attempted to correct his error, and, characteristically, although he was unaware of what he was doing, he re-emphasized the friendly relationship and, therefore, this time, practically upset the scales of balance. He said to the jury: "I referred in the case that Lou Demmler was an old friend of mine, which he is, but don't use any friendship, don't measure anything by the fact that the court related that fact to you. Decide it on the

law and the evidence, and that alone, without sympathy or prejudice or bias entering into this case at all."

This re-strumming on the guitar of "An old friend of mine" could not but reaffirm, in the minds of the jury, the depth of esteem existing between the defendant football referee and the judicial football referee. As a consequence, justice suffered a setback.

After it was all over, the judge, also characteristically, admitted the harm he had unintentionally caused the plaintiff and ordered a new trial. Under the law and all the rules of the game, the new trial was justified.

Some doubt has arisen as to whether the order for a new trial is for the ascertainment of damages only or whether it is to be a new trial generally. The latter is true.

Affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice JONES dissents.