Crotty, Appellant, *v.* Reading Industries, Inc.

Argued March 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stephen W. Graffam,* with him *Jerome W. Kiger,* and *Grogan, Graffam, McGinley & Solomon,* for appellant.

*Richard A. Bausher,* with him *Stevens & Lee,* for appellee.

OPINION BY JACOBS, J., September 22, 1975:

The appellant, Edward Crotty, was injured in an industrial accident while working as an independent contractor on the premises of the appellee, Reading Industries, Inc. [hereinafter Reading]. The appellant filed an action in trespass against Reading contending that the negligence of its agent or employee in starting an industrial machine on which the appellant was working, without first ascertaining that the machine could be started safely, was the proximate cause of appellant's injuries.[1] Upon trial of the cause a jury returned a verdict in favor of Reading Industries and against the appellant. Appellant moved for judgment n.o.v. or a new trial both of which were denied by the lower court. We reverse and grant a new trial.

The facts surrounding this unfortunate injury may be summarized briefly. The appellant was employed by Aetna Standard Engineering Company [hereinafter Aetna] as an engineer whose duties included the providing of technical assistance in field installation of equip-

---

1. Reading did not file an answer to the complaint, thereby admitting the agency or employment of the worker who started the machine and admitting the ownership, possession or control of the property and instrumentality involved. *See* Pa.R.C.P. 1045(a).

ment purchased from Aetna. At the time of the accident he was engaged in such a capacity at a plant being constructed by Reading, which had purchased from Aetna four large industrial machines used in the production of copper tubing. The appellant was totally familiar with the machines being installed and had provided technical assistance in their installation at this Reading factory on four separate occasions, totalling in all some eight working weeks.

The particular machine on which the appellant was injured utilized a large carousel-type conveyor system which fed material into the machine. In order to make adjustments to the machine, which was not yet in operation, it was necessary for the appellant to step into this carousel system. The evidence reveals that on his way to the machine the appellant passed its control panel and pushed the "stop" button which shut off the power to the carousel system. The appellant was aware that there were two additional power switches, one a "knife-type" switch located on the back of the control panel which controlled power to the carousel system, and another some 160-170 feet away which was the main power switch for the entire machine. Nevertheless, he only used the "stop" button on the control panel. The evidence reveals that the appellant was aware that the carousel system could be started after the stop button had been pushed merely by pressing two buttons, one labeled "on", the other "index."

While the appellant was engaged in making adjustments to the machine an employee of Reading, unaware that the appellant was standing on the carousel system a bare seven feet away, pushed the two buttons and set the system in motion. The appellant, unable to vault free of the machine, was carried into its midst sustaining serious injuries.

The issue presented in this appeal is whether the lower court erred in refusing to charge the jury on the duty owed by a possessor of land to a business visitor.

The court below charged the jury only in general negligence terms[2] omitting completely any discussion of duty. The appellant contends that his points for charge which were submitted, denied, and properly preserved for appellate review, represent accurate statements of the law regarding the duty owed by a possessor of land to a business visitor, and that the court committed reversible error in denying them.

It is axiomatic that in reviewing the adequacy of a charge we must review the charge as a whole taken in its entirety. *Commonwealth v. Rodgers,* 459 Pa. 129, 327 A.2d 118 (1974) ; *Commonwealth v. Fell,* 453 Pa. 531, 309 A.2d 417 (1973). In the instant case, a complete review of the charge reveals that the trial court instructed the jury on the general principles of negligence,[3] proximate cause and contributory negligence but not on the duty of care owed by a possessor of land to a business visitor. "The primary duty of a trial judge in charging a jury is to clarify the issues so that the jury may compre-

---

2.   The charge will be discussed more fully, *infra.*

3.   The court stated in pertinent part:

"The foundation or basis for this litigation is negligence.

"Although there are a number of aspects to the law of negligence which you must know before you can decide the issues in this case, it is important at the outset that you first know what is meant by the term negligence. The legal term negligence, otherwise known as carelessness, is the absence of ordinary care which a reasonably prudent person would exercise in the circumstances here presented. Negligent conduct may consist either of an act or an omission to act where there is a duty to do so. In other words, negligence is the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, in light of all the surrounding circumstances established by the evidence in the case. It is for you to determine how a reasonably careful person would act in those circumstances."

That part of the charge dealing with proximate cause and contributory negligence is not in dispute.

hend the questions they are to decide." *Archer v. Pa. R.R. Co.*, 166 Pa. Superior Ct. 538, 541, 72 A.2d 609, 611 (1950) ; *see De Reeder v. Travelers Ins. Co.*, 329 Pa. 328, 198 A. 45 (1938). The instructions must give the jury a reasonable guide for the determination of the question of the defendant's alleged negligence, *Faulkner v. Delph Spinning Co., Inc.*, 245 Pa. 40, 91 A. 607 (1914) and on the degree of care required of the defendant. *Archer v. Pa. R.R. Co., supra.* "The jury [can] not determine whether the defendant [is] guilty of negligence without knowing the degree of care required of the defendant . . . ." *Kelchner v. Nanticoke Borough*, 209 Pa. 412, 418, 58 A. 851, 853 (1904).

It is important to note, however, that in the case at bar the appellant did not object to the court's failure to charge on the aspect of duty. His specific objections were to the court's refusal of his submitted points for charge. Therefore, we must examine the submitted points to determine whether they represent accurate and applicable statements of the law. If they do not, the court was correct in refusing them and any omissions by the court with respect to the aspect of duty have been waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Appellant's first requested point for charge states :

"[a] business visitor is a person who is invited or permitted to enter or remain on land in possession of another for a purpose directly or indirectly connected with the business dealings between them."

It is difficult to dispute this requested point. First stated in the Restatement of Torts §332 (1938), it was quoted in *Kimble v. Mackintosh Hemphill Co.*, 359 Pa. 461, 470, 59 A.2d 68, 72 (1948) where the Court found a railroad brakeman shifting railroad cars on land leased to the defendant to be a business visitor. *See Argo v. Goodstein*, 438 Pa. 468, 265 A.2d 783 (1970) (door-to-door peddler is business visitor). The requested point is substantially

identical with the Restatement (Second) of Torts §332(3) (1965), and independent contractors doing work on the defendant's premises clearly qualify as business visitors whether one employs an economic benefit theory or an invitation theory in defining the business visitor. *See Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 266 A.2d 478 (1970) ; *Argo v. Goodstein*, supra; *Darrah v. Jones & Laughlin Steel Corp.*, 397 Pa. 334, 155 A.2d 201 (1959) ; *Miller v. Hickey*, 368 Pa. 317, 81 A.2d 910 (1951) ; *Starke v. Long*, 221 Pa. Superior Ct. 338, 292 A.2d 440 (1972) ; *see also* W. Prosser, The Law of Torts §61 (1971).

Appellant's second and third requested points which were also refused state:

"2. As a business visitor, the plaintiff had the right to expect they [sic] would not be injured as a result of affirmative negligence on the part of the defendant.

"3. The plaintiff, as a business visitor enters the defendant's premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there."

These two requested points clearly engage the central issue—the defendant's duty towards its business visitor. Each is a correct,[4] if isolated, statement of the law and we do not find either misleading.

The duty of a possessor of land towards a third person entering the land has been historically measured by the status of the entrant at the time of the accident. Resulting from a mixture of a property law tracing its heritage to feudalism with the relatively recent development of the law of negligence, the limited liability of a possessor of land depending upon the status of the entrant remains in the majority of jurisdictions a viable concept. *See, e.g., Annot., Modern Status of Rules Conditioning Land-*

---

4. Requested point number 2 was quoted from *McKown v. Demmler Properties, Inc.*, 419 Pa. 475, 478-79, 214 A.2d 626, 627 (1965) ; point 3 is from Restatement (Second) of Torts §341A, comment a (1965). The citations were furnished to the trial court.

*owner's Liability Upon Status of Injured Party As Invitee, Licensee, or Trespasser,* 32 A.L.R.3d 508 (1970) ; 2 F. Harper & F. James, *The Law of Torts,* §§27.1-.21 (1956).[5] The landowner's duty of protection toward a business visitor is the highest duty owed to any entrant upon the land. The rule as stated in the early English case of *Indermaur v. Dames,* L.R. 1 C.P. 274, 35 L.J.C.P. 184, *aff'd,* L.R. 2 C.P. 311, 36 L.J.C.P. 181 (1866) places the possessor of land under an affirmative duty to protect the business visitor not only against dangers of which he knows but also against those which with reasonable care he might discover. The occupier of the premises ordinarily owes the business visitor "not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation or warn him of the danger." *Annot.,* supra at 518 (footnotes omitted.)

The law in Pennsylvania is not in conflict with these general principles. In *Argo v. Goodstein,* supra, a case in which a blind business visitor was injured when he fell into an open pit on the defendant's premises, the Court, quoting from the Restatement, said that "an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception." *Id.* at 476, 265 A.2d at 787. The similarity between this statement and appellant's requested point number 3, supra, cannot be overlooked. In the case at bar the appellant was not injured by a condition on the premises but by the active negligence of an employee who started the machinery without first inspecting the area.

---

5. *But see Rowland v. Christian,* 69 Cal.2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968) and its progeny.

The Court in *Argo* noted that the business visitor was entitled to expect reasonable care on the part of the landowner not only in the original construction of the premises, but also in "any activities of the possessor or his employees which may affect their condition. . . ." *Id.* at 476, 265 A.2d at 787.

In *Darrah v. Jones & Laughlin Steel Corp.*, supra, the plaintiff, a business visitor working as an electrician-painter on the defendant's premises, was required to work in close proximity to a large movable crane. The crane was moved without warning and the plaintiff was severely injured. The Court observed: "[t]he danger to [the plaintiff] was not only reasonably foreseeable, it was obvious. Indeed, the accident occurred because of the *active* negligent conduct of defendant's agent in failing to give [the plaintiff] warning of the operation of the crane . . . ." *Id.* at 338, 155 A.2d at 203 (emphasis original). Although the plaintiff in *Darrah* had been promised a warning, the duty to warn existed independently of that promise. "[I]t was obvious to anyone who took the trouble to look that Darrah was working there[6] . . . A duty to make the premises reasonably safe for business visitors *or to warn them of the dangerous condition existing or about to occur by the operation of machinery was not honored.*" *Id.* at 338-39, 155 A.2d at 203 (footnote and emphasis added). *See Kakias v. U.S. Steel Co.*, 214 F.2d 434 (3d Cir. 1954) (plaintiff injured by "active injurious conduct on the part of the defendant's employees" in starting a conveyor belt without warning).

The duty of inspection distinguishes the obligation of the possessor owed to business visitors from the obligation owed to licensees. *See generally Annot.*, supra. A visual inspection has long been required for the protection of business visitors; *see, e.g., Argo v. Goodstein,*

---

6. The appellant in the case at bar was working seven feet from and in a direct line of vision with the employee who engaged the machinery.

supra; *Miller v. Hickey,* supra (duty to inspect fire escape); *Travers v. Delaware County,* 280 Pa. 335, 124 A. 497 (1924) (bridge); and indeed, the duty may go beyond a mere visual inspection. *Starke v. Long,* supra (jury may determine whether more than a visual inspection was reasonably required). It is thus clear that the appellant's requested points for charge numbers two and three represented accurate statements of the law.

Reading counters this argument by contending that these principles of law are inapplicable because the appellant was an acknowledged expert in the use and operation of the machinery in question and that he had full knowledge of the dangers which would be encountered. It is well settled that there is no duty to warn or guard a business visitor against a danger that is known or obvious. *Podvin v. Somerton Springs Swim Club, Inc.,* 406 Pa. 384, 178 A.2d 615 (1962). The Restatement (Second) of Torts addresses itself to this issue in Sections 341 A and 343 A. Section 341 A states: "[a] possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it."

This section, alleges Reading, demonstrates that requested point number 3, although perhaps a correct statement of the law, is too broad because it does not take into consideration the experience, knowledge and expertise of the appellant. Reading asserts that Comment (e) to Restatement 343 A further demonstrates the inadequacy of the appellant's requested points for charge. Comment (e) states:

"In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is

free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."

We find the appeal of these arguments more superficial than substantial. In the instant case the appellant was an acknowledged expert in the operation of the industrial device which was the instrument of his injuries. However, it was not a malfunction or a defect in the machine which caused his injuries; it was a failure on the part of the operator of that machine to look before he began his enterprise. Appellant was well aware of the dangers inherent in the instrumentality, but not necessarily aware of the dangers inherent in its agent. Additionally, Reading's objection goes more to a definition of "reasonable care" as used in requested point number three. Reading, of course, could have asked the trial court for a charge defining reasonable care. Moreover, as intimated earlier, we are not convinced that Reading is correct in asserting the knowledge of the appellant as a dominant factor. That knowledge was not shown to extend to the activities of Reading's employees.

The occupier's duty is one of due care under all the circumstances. That duty includes the duty to inspect the premises and to discover dangerous conditions, *Durning v. Hyman*, 286 Pa. 376, 133 A. 568 (1926) ; and the duty to use care not to injure a business visitor by negligent activity. Restatement (Second) of Torts, §341.A (1965). We have analyzed the first three points requested by the

appellant. Taken together they request the court to charge that the appellant was a business visitor. Clearly the appellant was entitled to such a charge. Points two and three are correct and opposite statements of the duties owed to such visitors. The appellant was prejudiced by the court's refusal to instruct the jury on these duties and a new trial must be granted.[7]

Judgment reversed and new trial granted.

7. Because we find the refusal of points one, two and three sufficient for the grant of a new trial we need not consider whether the remaining points were properly rejected. We note in passing, however, that they appear to be too specific and, in effect, usurp from the jury the question of the reasonableness of the conduct in question.

DISSENTING OPINION BY PRICE, J.:

I dissent. Though I agree, generally, with the majority's delineation of the facts, there are certain areas upon which I feel compelled to elaborate. Appellant's employer, Aetna Standard Engineering Company (Aetna) was a manufacturer of various types of machinery for use in mills. Appellant began working for Aetna in 1948 as a wire-drawing expert, but subsequent to 1956, he worked as a field engineer. As such, his duties consisted of trouble-shooting[1] and starting up and installing new equipment for customers of Aetna.

Appellee was one of Aetna's customers, having purchased four machines. Two were known as IV machines and two were IVC machines. Because the machines were not performing as promised, the appellant was sent to

1. Appellant defined "troubleshooting" as follows: "If the customer had difficulty in equipment that had been ˙sold him, in that it failed to produce as guaranteed, I would go and rectify the situation." [NT 25a] Appellant noted that a troubleshooter would need "enough background and experience to fix or suggest repairs on equipment that might not be working correctly." [NT 122a]

appellee's premises, in his capacity as a troubleshooter. On four separate occasions, between July 19, 1970, and the date of the accident, September 28, 1970, appellant was on the appellee's premises working on his employer's machines. Each occasion was of at least one week's duration, and on each visit he spent some time working on the IVC machines by which he was eventually injured.

On September 28, 1970, appellant worked on both IVC machines, beginning with the machine designated in the record as IVC-2. On his way to IVC-2, he passed by the other IVC, the one by which he was injured, and designated in the record as IVC-1. At that time, he observed appellee's project engineer, James G. Ertz, working on the indexing mechanism of IVC-1, which he knew controlled the circular motion of the carousel.

After completing his work on IVC-2, appellant turned to IVC-1. Appellant knew that he might have to step onto the carousel portion of the IVC and therefore he pushed the "stop" button on the control panel, shutting off the power to the carousel system. Appellant was aware that the system could be started after the "stop" button had been pressed, by pressing the "on" and "index" buttons located on the control panel. Appellant was also aware that there were two other switches which could deprive the carousel system of electrical power, but he failed to utilize either of them. One switch, located on the back of the control panel, controlled the power flowing to the carousel system. The other, located 160-170 feet from the control panel, was the main power switch. The latter switch was not employed because appellant felt that it was too far away.

Although he had seen Ertz working on the machine earlier in the morning, appellant failed to determine whether Ertz was still working on it. The work performed by Ertz required rotation of the carousel, and on this particular occasion, it was rotated while appellant was within, causing him severe injuries.

At trial, the appellant submitted requested instructions to the jury which the court refused. The gist of appellant's claim is that the trial court erred in refusing to instruct the jury that appellant was on appellee's property as a business visitor and as to the standard of care applicable to business visitors. Although somewhat inartfully phrased, the court's charge, set out in the majority opinion, conveys the general negligence standard. At any rate, as the majority notes, the appellant has waived any defects in the charge other than the court's failure to charge the jury with the submitted instructions.

*Restatement (Second) of Torts* §343A(1) (1965) provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Comment e to §343A states:

"In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. *Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor,* or so obvious to him that he may be expected to discover them." (emphasis added).

The record incontrovertibly establishes that appellant was aware of the danger he faced. Obviously, he did not

know that appellee's servant would start the carousel at that particular moment. But he knew that appellee's servant had been working on the indexing mechanism, he knew that the carousel could be engaged by the mere pressing of two buttons, and he knew the injuries that awaited him should that event occur. The last sentence of comment e, *supra,* explains that appellee was under no duty to take extra precautions to protect appellant from the danger to which he exposed himself, and any instruction which would have imposed such a duty would have been misleading and erroneous.

If appellant had been injured by a dangerous condition both unknown and undetectable, the requested instructions would have been proper. In that context, the duty owed to a business visitor would have been relevant to determining appellee's liability. In the context with which we are actually faced, however, instructing the jury as to appellant's status as a business visitor would have been misleading. Appellee owed no duty to appellant, other than that of ordinary care, with respect to the danger that actually injured him.

It is true that appellant was a business visitor on appellee's property. It is also true, as a general rule, that a business visitor "enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there." *Restatement (Second) of Torts* §341A, comment a (1965). The implied assurance of preparation does not apply, however, to "dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." *Restatement (Second) of Torts* §343A, comment e (1965). Indeed, "[i]f he knows of the nature of the activities conducted upon the land and the manner in which they are conducted, he has all that he is entitled to expect. . . ." *Restatement (Second) of Torts* §341, comment a (1965). Therefore, the request to charge appellee with the higher duty of preparation was properly refused.

The appellant contends that *Darrah v. Jones & Laughlin Steel Corp.*, 397 Pa. 334, 155 A.2d 201 (1959), mandates the opposite conclusion. However, in *Darrah*, the danger was neither known nor obvious to the plaintiff. Darrah was an electrician-painter, injured by one of the defendant's cranes. There was no evidence in *Darrah* that the plaintiff was experienced in working on or near cranes, and there was nothing which would have led the plaintiff to foresee the crane operator's action.

I would affirm the judgment of the lower court.