**Bruce v. Fieles**

C.P. of Chester County, nos. 86-01879 and 87-07032.

*William J. Gallagher* and *Timothy F. Rayne,* for plaintiff.

*Frank S. Blatcher,* for defendant Evelyn Donaldson.

*Theodore J. Chylack,* for defendant PennDOT.

MacELREE, *J.,* August 21, 1996—In the trial of this negligence action, by Jonathan M. Bruce, for personal injuries he sustained in a motor vehicle accident, we granted, on January 24, 1996, a nonsuit in favor of the Commonwealth, Department of Transportation, and on January 24, 1996, the jury rendered a verdict in favor of the defendant, William Fieles.[1] This matter is now before the court on Bruce's post-trial motions, filed February 2, 1996.

Bruce seeks a new trial on the grounds that the court erred in (1) granting a nonsuit in favor of PennDOT and (2) refusing to instruct the jury that Fieles had acted negligently as a matter of law.

_____

1. Plaintiff's action against PennDOT was filed under docket no. 86-01879. Bruce filed an action against Fieles, Evelyn duPont Donaldson, the owner of the land at the northeast corner of the intersection and Glenn and Lilian Engle, the tenants who farmed the land at the corner under docket no. 87-07032. The actions were consolidated under no. 87-07032. The action against Donaldson and the Engles had been resolved prior to trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 1985, a clear, bright Friday afternoon, Bruce was operating his motorcycle on Hood Road in a southerly direction toward the intersection with Route 926. He was traveling within the speed limit. Bruce was on his way home from work but became lost on the rural back country roads. As he approached the intersection he failed to notice the telltale signs of the intersection, which included a line of utility poles, fencing, signs, mailboxes, the back of the stop sign on the opposite side of the intersection and the intersecting roadway of Route 926 itself. Bruce did not slow down for the intersection nor did he look for traffic to his right or left.

Defendant Fieles was operating his pickup truck, within the speed limit, in a westerly direction on Route 926, as he had done regularly for decades. Fieles knew that Hood Road had been controlled by stop signs for many years. He did not notice that the stop sign for Hood Road on the north side of the intersection was missing.

Bruce did not see Fieles' truck until it was too late to avoid a collision with the truck. Bruce's motorcycle struck the right rear of the bed of Fieles' pickup truck. Fieles did not see Bruce's motorcycle directly. He got a glimpse of something from his right side, then heard and felt the impact on the back of his truck. Bruce sustained serious injuries in the accident.

As Route 926 approaches Hood Road from the east, it is on an upward grade and the view of traffic on the north side of Hood Road is obstructed by an earthen bank and vegetation. In the early 1950s PennDOT erected stop signs on Hood Road and thereby completed the process of making Route 926 the "through roadway"

at its intersection with Hood Road. As of the date of the accident, one of the two stop signs controlling traffic on Hood Road at Route 926 had been down for almost a week. One witness specifically recalls it missing for five days; another witness recalled it missing for "several days." Yet, no one notified the police, PennDOT or the township, that the stop sign facing north on Hood Road was missing.

At the close of Bruce's case in chief, we granted a motion for compulsory nonsuit in favor of PennDOT. We found that Bruce had failed to present sufficient evidence that PennDOT had notice of the missing stop sign. Bruce's claim against Fieles was submitted to the jury, which rendered a verdict in favor of Fieles, having found him not negligent.

## NONSUIT IN FAVOR OF PennDOT

A nonsuit is properly entered where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial judge to determine whether the plaintiff has met this burden prior to submitting the case to the jury. *Hatbob v. Brown,* 394 Pa. Super. 234, 237, 575 A.2d 607, 608 (1990), citing *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983) and *Thomas v. Ribble,* 404 Pa. 296, 172 A.2d 280 (1961). In considering the motion for nonsuit, we afforded the plaintiff the benefit of every fact and reasonable inference arising from the evidence. *Zito v. Merit Outlet Stores,* 436 Pa. Super. 213, 216, 647 A.2d 573, 574 (1994), citing *Canty v. Sun Transport Inc.,* 422 Pa. Super. 607, 620 A.2d 1 (1992). In this negligence action against the Commonwealth, plaintiff, Bruce, needed to produce sufficient evidence of *each* of four elements as follows: (1) a duty recognized by law, requiring

the Commonwealth to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a reasonably close causal connection between the conduct and resulting injury; (4) actual loss or damage resulting to the interests of another. *Fidanza v. PennDOT,* 655 A. 2d 1076, 1078 (Pa. Commw. 1995), citing *Farber v. Engle,* 106 Pa. Commw. 173, 525 A.2d 864 (1987).

In order to establish that the Commonwealth owed him a duty, Bruce was required to show that the Commonwealth had knowledge, actual or constructive, of the dangerous situation posed by the missing stop sign. *Fidanza, supra,* 655 A.2d at 1078-79; *Miranda v. City of Philadelphia,* 166 Pa. Commw. 181, 187-88, 646 A.2d 71, 74 (1994). In this case, Bruce does not contend that the Commonwealth had actual notice of the missing stop sign at the intersection of Hood Road and Route 926. Bruce sought to establish constructive notice, on the part of the Commonwealth based on the length of time that the sign was down. In order to establish constructive notice, it must be established that the defective condition existed for such a period of time that it could have been discovered and corrected through the exercise of reasonable care. *Murray v. Siegel,* 413 Pa. 23, 27, 195 A.2d 790, 792 (1963).

With respect to the period of time the sign was missing prior to the accident, Bruce introduced testimony from three witnesses. First, Lynn Giacchino, testified that she was in the habit of passing the intersection of Hood Road and Route 926 regularly on Sundays on her way to visit her sister. Ms. Giacchino testified that the sign was down on Sunday, September 15, five days prior to the accident, which occurred on Friday, September 20, 1985. N.T. 1/23/96 p. 100.

Second, Lisa Campbell, employed as a veterinarian at the Delaware Equine Center at the time of the accident, testified that the Delaware Equine Center is located at the intersection in question, and that she was in the habit of regularly passing through the intersection. During her testimony Dr. Campbell was able to state only that the stop sign had been missing "at least several days" on the day of the accident. N.T. 1/23/96 p. 114.

Third, Roby Dean Testerman, also an employee at Delaware Equine Center at the time of the accident, testified that the stop sign had been "leaning down" a couple of times before the accident and that he had pushed it back to an upright position several times. The last time Mr. Testerman pushed the stop sign back up was one week prior to the accident. N.T. 1/23/96 pp. 126-30. Thus, the longest period of time that any witness could testify that the sign had been down was five days, as Testerman remembers pushing it up one week before the accident.

With regard to the time period in which the absence of the sign should reasonably have been discovered and remedied by the Commonwealth, plaintiff introduced expert testimony, by John Comiskey, a former PennDOT engineer. Comiskey testified as follows:

"Q: Okay. And in your opinion, from PennDOT's manual and the responsibilities placed on their people, should that have been picked up with PennDOT within one week?

"A: Well, part of the responsibilities of the assistant maintenance managers is surveillance. Each one has a portion of the highway within the counties to as part of their responsibilities to look out and find out what's happening, to keep abreast of the things that are changing in the highway system. And, yes, they should have seen that there was a stop sign missing at that location.

"Q: If the stop sign was seen to be missing, should that have been replaced within a particular period?

"A: It should be replaced as quickly as possible." N.T. 1/23/96 pp. 154-55.

Mr. Comiskey was questioned further on this point, on cross-examination, as follows:

"Q: And you're saying here within one week without having any notice of this particular sign being missing the Department of Transportation forces should have been out there inspecting this roadway to find out that was done?

"A: I'm saying that it would be normal for the assistant manager to pass that at least once during the week.

"Q: You're saying that every road that an assistant manager has under his or her jurisdiction should be covered every week?

"A: Yes." N.T. 1/23/96 pp. 162-63.

Defendant did not contest Mr. Comiskey's competence as an expert nor did he object on the grounds that Comiskey's employment as a PennDOT engineer had ended 30 years ago, in 1965. In addition, defendant made no objection on the grounds that Comiskey failed to render his opinion to a reasonable degree of engineering certainty or that his opinion was based on little, if any, foundation. In the absence of any objection defendant may have waived these issues. *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

In any event, we considered Mr. Comiskey's testimony in conjunction with the testimony of the other witnesses, who could say only that the sign had been down "several days" to five days. Comiskey's testimony established, at best, a duty on the part of the Commonwealth to discover and remedy the sign absence

within a week, *i.e.,* seven days or a business week including two weekends—10 days. The plaintiff's best case was that the sign was only down for five days, which is less than the time period in which even, in Comiskey's opinion, the Commonwealth should have noticed the sign missing.

In *Lanni v. Pennsylvania Railroad Company,* 371 Pa. 106, 88 A.2d 887 (1952), the Pennsylvania Supreme Court directed the entry of judgment n.o.v. for the defendant where plaintiff failed to establish how long the large grease spot, which caused her fall, had existed prior to the accident. The court set forth the factors to be considered in establishing constructive notice, as follows:

"What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case. Some of the factors affecting the question, in addition to the time elapsing between the origin of the defect and the accident, are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Id.* at 111, 88 A.2d at 889. (citation omitted)

In *Miranda v. City of Philadelphia, supra,* the Commonwealth Court affirmed the dismissal of the action against defendant, PennDOT, on the grounds that a period as long as 13 days was insufficient to establish constructive notice of a snow covered excavation in the cartway of a Philadelphia street. A defective condition of an urban roadway is much more easily noticed than a missing stop sign in rural Chester County. Under

the particular facts of the case at bar, we think it improper to impose a more limited time standard for notice on the Commonwealth. We concluded, therefore, that plaintiff failed to show constructive knowledge on the part of the Commonwealth. Without such knowledge, there could be no duty owed to plaintiff as a matter of law.

A duty owed by the defendant is a threshold element of the cause of action for negligence. Plaintiff failed to produce sufficient evidence of this threshold element of his cause of action. Thus, the nonsuit in favor of defendant Commonwealth was properly granted.

## JURY CHARGE

In charging a jury, the primary duty of the court is "to clarify the issues so that the jury may comprehend the questions they are to decide." *Archer v. Pennsylvania Railroad Co.,* 166 Pa. Super. 538, 541, 72 A.2d 609, 611 (1950). See also, *DeReeder v. Travelers Insurance Co.,* 329 Pa. 328, 198 A.2d 45 (1938). Where the cause of action is one for negligence, "The instructions must give the jury a reasonable guide for the determination of the question of the defendant's alleged negligence, *Faulkner v. Delph Spinning Co. Inc.,* 245 Pa. 40, 91 A. 607 (1914), and on the degree of care required of the defendant." *Crotty v. Reading Industries Inc.,* 237 Pa. Super. 1, 6, 345 A.2d 259, 261 (1975). Where a party submits points for charge, the court may refuse them if they do not represent accurate and applicable statements of law. *Id.* at 10, 345 A.2d at 262. "A trial court maintains wide discretion in phrasing points for charge and may use its own words as long as the issues and questions to be resolved are clear." *Pagesh v. Ucman,* 403 Pa. Super. 549, 554, 589 A.2d 747, 749 (1991). See also, *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983).

In reviewing the charge to the jury the court must consider the charge as a whole to determine whether there was a "clear abuse of discretion or error of law controlling the outcome of the case." *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995), citing *Williams v. Philadelphia Transportation Co.,* 415 Pa. 370, 384, 203 A.2d 665, 667 (1964). A charge is adequate "unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Stewart v. Motts, supra* at 606, 654 A.2d at 540, quoting *Voitasefski v. Pittsburgh Railways Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949).

Bruce asserts that the trial court erred in its charge to the jury, on the rule concerning right-of-way, by refusing to limit the court's instruction to that proposed by Bruce, as follows:

"(9) When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver on the left shall yield the right-of-way to the driver on the right." 75 Pa.C.S. §3321(a). *Todd v. Talatta,* 200 Pa. Super. 342, 188 A.2d 807 (1963).

"(10) The belief or knowledge of a driver as to the existence or former existence of a stop sign will not change the rule that when two vehicles approach or enter an intersection from different highways at approximately the same time, the driver on the left shall yield to the driver on the right." *Frankowski v. Metting,* 7 Bucks Co. L. Rep. 231 (1958).

"(11) Negligence Per Se—Violation of Statute." Pa.S.S.J.I. (Civ.) 3.30.

Point for charge no. 9 comprised only a portion of the statutory section which establishes which driver

shall yield at an intersection. We read to the jury the entire section of the statute, as follows:

"Section 3321. *Vehicle approaching or entering intersection*

"(a) General rule.—When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"(b) Exceptions.—The right-of-way rule declared in subsection (a) is modified at through highways and otherwise as stated in this part." See 75 Pa.C.S. §3321 (1977).[2]

We then also read to the jury the definition of "through highway," at 75 Pa.C.S. §102 (1977), as follows:

" *'Through highway.'* A highway or portion of a highway on which vehicular traffic is given preferential right-of-way, and at the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles on the through highway in obedience to a stop sign, yield sign or other official traffic-control device when the signs or devices are erected as provided in this title."

Our instructions to the jury included the language in Bruce's point for charge no. 9. However, had we stopped there in our instructions the jury would have heard only an incomplete and inaccurate statement of the law applicable to the evidence presented. Bruce's requested points for charge nos. 9, 10 and 11, conveniently omit the statutory language regarding through

---

2. Subsection (b) was amended on December 11, 1986, effective 60 days thereafter. In as much as the accident in this case occurred on September 20, 1985, we read to the jury the pre-amendment version of the statute.

highways. Under the circumstances of this case, an omission of the through highway exception to the general rule regarding right-of-way and the duty to yield would mislead the jury and would constitute a material misstatement of the applicable law.

The language in Bruce's point for charge no. 10 is not derived from the Standard Civil Instructions.[3] Bruce does not cite any statute or appellate authority supporting his proposed point for charge and our research has disclosed none. In his point for charge no. 10, Bruce raises the issue as to whether a roadway may lose its through highway status where one of the two stop signs controlling the intersection is temporarily down without the permission of or any action by the Commonwealth or the municipality. We conclude that based upon the statutory definition of a through highway and upon considerations of public policy a roadway does not so easily or unintentionally lose its character as a through highway because one of two stop signs is temporarily down.

Under the statutory definition, at 75 Pa.C.S. §102 (1977), a roadway becomes a "through highway" *when* the signs or [traffic control] devices are erected as provided in this title. The word when is defined in Webster's Third New International Dictionary (1966), as follows: "at which time; in what period." The statutory definition establishes a specific point in time at which the roadway becomes a through highway; that is, at the time of the initial erection of the stop signs.

---

3. In *Frankowski v. Metting,* 7 Bucks Co. L. Rep. 231 (1958), which plaintiff cites in support his proposed jury instruction, the stop sign had been down for a year. The opinion does not suggest the same result where the sign is temporarily down.

Had the legislature intended that where a stop sign was missing, without the intent or the knowledge of the authorities, a roadway would lose its status as a through highway, the statutory definition would read differently. The legislature would have used the word "while" in its definition. "While" is defined as "during the time that." See Webster's Third New International Dictionary (1966). A through highway would have been defined, in pertinent part, as follows; "*while* the signs or devices are erected as provided in this title." Thus written, the intent would clearly have been for the roadway to be a through highway only during the time that a stop sign is in place. As actually written the legislature demonstrated its intent to establish a through highway "when" or at the time the stop sign was placed.

The legislature has granted the power to erect traffic control devices exclusively to the Department of Transportation and to local authorities. The authorization to erect stop signs is found at 75 Pa.C.S. §6124 which states as follows:

"The department on state-designated highways, including intersections with local highways, and local authorities on intersections of highways under their jurisdiction may erect and maintain stop signs, yield signs or other official traffic-control devices to designate through highways or to designate intersections at which vehicular traffic on one or more of the roadways should yield or stop and yield before entering the intersection."

The exclusive nature of the power to erect stop signs is established by section 6125 of the Motor Vehicle Code, which forbids any person to "place, maintain or display upon any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device . . . ." 75 Pa.C.S. §6125(a). The exclusive power

to erect and maintain traffic control devices necessarily embraces the exclusive power to remove the same. Indeed, the General Assembly has made interference with traffic signs by unauthorized persons a summary offense. See 75 Pa.C.S. §§6126 and 6502. To conclude that the temporary absence of a stop sign changes the character of a Commonwealth-designated "through highway" would be to allow vandals, errant vehicles or other unauthorized persons to exercise the power granted by the legislature exclusively to PennDOT and local authorities. This is a result which was surely not contemplated by the legislature.

Policy considerations also lead us to conclude that "through highway" status cannot be lost by the temporary and unintended absence of one of the two stop signs at an intersection. Were it true that a "through highway" could so easily and haphazardly be eliminated, all drivers would need to anticipate such an unexpected change and at all times would, as a practical matter, be required to stop at each intersection, regardless of the prior erection of stop signs. In our view, such a construction would defeat the legislative purpose of establishing "through highways." The creation of "through highways" would have been a meaningless legislative exercise if the continued existence of "through highway" status could not be anticipated and to a reasonable extent relied upon by the populace regularly traveling the highway.

In addition, were we to accept the proposition that the unintended absence of one of the two stop signs at an intersection eliminated "through highway" status, a question arises regarding the stop sign on the opposite side of the highway and the consequent yield rules. Where one sign is down and the opposite sign is up,

does there exist one-half of a "through highway," with differing yield rules?

It is easy to imagine the roadway havoc that would result in the event that established yield rules could be altered by the temporary absence of a sign. For example, where the yield sign on a turnpike entrance ramp was temporarily down, the turnpike traffic would be required to yield to the slower traffic entering the highway in accordance with the general rule that the driver on the left yield to the driver on the right. Such a result is unreasonable and dangerous.

An instruction to the jury, on only the general yield rule, at section 3321 of the Motor Vehicle Code, followed by an instruction on negligence per se, without instruction on the definition of, and the yield rule relevant to, "through highways" would have been incomplete and misleading. The jury received instruction on the basic elements of a tort action; each party's burden of proof; the definition of substantial factor, negligence, carelessness, negligent conduct, reasonable and ordinary care; the duty to use ordinary care; contributory negligence and defendants' burden with respect thereto; causation; fault; duty to look and see what was visible at the intersection; duty to keep a fair lookout; excessive speed; duty to observe dangerous conditions at intersection; duty to keep vehicle under control; right-of-way and qualifications thereto. We further instructed the jury that a party's failure to observe ordinary and reasonable precautions in regard to keeping a lookout, to the speed and control of their vehicle at an intersection may constitute negligence. We read section 3321(a) and (b) of the Motor Vehicle Code, at 75 Pa.C.S. §3321 (1977), and also read the statutory definition of through highway, at 75 Pa.C.S. §102. We instructed on defendant's burden of proving he was on a through highway, and the need

to consider whether defendant knew or should have known that the stop sign was missing. The jury received instruction on all of the applicable law and it was for the jury to determine whether the defendant had been traveling on a through highway or if defendant was negligent.

For the reasons set forth herein, plaintiff's post-trial motions are denied pursuant to the court's order, as follows:

## ORDER

And now, August 21, 1996, upon consideration of the post-trial motions, by plaintiff, and the response thereto, and following argument by counsel, it is hereby ordered and decreed that the plaintiff's motion to remove the nonsuit is denied and plaintiff's motion for a new trial against William Fieles is denied.