Starke, Appellant, *v.* Long.

Argued March 20, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*James C. Hogan,* with him *Hogan and Scott,* for appellant.

*Edward H. Feege,* with him *Charles L. Oldt, Fackenthal, Teel & Stettz,* and *Fox, Oldt & Hambrook,* for appellees.

OPINION BY CERCONE, J., June 15, 1972:

Albert Carl Starke, Jr. was a participant in lifeguard lessons being given at a public swimming pool operated by the Bushkill Park Amusement Company. The lessons were being given by one of the pool's lifeguards, Sterling Mumaw, with full knowledge and consent of the pool's manager, Mrs. June Mumaw (Sterling's mother), and of Mabel Long, sole owner of the Bushkill Park Amusement Corporation, of which corporation she is President. Plaintiff was injured when a four and one-half foot high plywood foot board of the lifeguard platform rig from which he was diving, and which was placed five feet away from the edge of the pool, broke under his weight (220 pounds), causing him to be hurled to the concrete pool apron below. The board was attached to the platform rig by four bolts but had no underneath support.

In his suit against the amusement company and Mrs. Long and Sterling Mumaw (the lifeguard instructor), plaintiff presented the testimony of an expert witness, Dr. Donald Parker, Assistant Professor of Engineering Science at Lafayette College, that the board broke under the strain of plaintiff's use because the beam was highly "underdesigned" and probably "not designed at all". It was Dr. Parker's opinion that even had the board been of solid wood instead of plywood it still would not have been sufficiently safe to support a 200-pound static weight. Dr. Parker further testified that this design deficiency would not have been apparent to an ordinary purchaser from a visual inspection. On the basis of Dr. Parker's testimony, a compulsory nonsuit in favor of all the defendants was entered by the court below.

In relying on Dr. Parker's testimony, the lower court improperly assumed that the duties of the property owner and possessor were limited to a visual in-

spection. Section 343 of the Restatement of the Law of Torts, 2d, states:

"§343. Dangerous Conditions Known to or Discoverable by Possessor

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows *or by the exercise of reasonable care would discover the condition,* and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) *fails to exercise reasonable care to protect them against the danger.*" (emphasis supplied)

A reading of the above rule makes manifest that the issue is not the narrow one on which the court below decided the case: whether a visual inspection would have revealed the defect in question. Instead, the true issue is a much broader one: namely, does the duty of reasonable care owed by the defendants include the duty to test the board of the lifeguard platform rig to ascertain its safety for use by those invited to participate in the life-saving course? The extent of care required to be exercised by an owner or possessor of land is at all times commensurate with the circumstances surrounding the use to which he has invited his property to be used. The comment to the above-quoted Section 343 of the Restatement of the Law of Torts, 2d, notes: "In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only

such preparation as a reasonably prudent householder makes for the reception of such visitors. *On the other hand, one entering a store, theater, office building, or hotel, is entitled to expect that his host will make far greater preparation to secure the safety of his patrons than a householder will make for his social or even his business visitors."* (emphasis supplied)

Certainly the owner and operator of a pool who permits plaintiff to be invited on his property and to participate in lifeguard lessons at his pool is under a duty to make a greater preparation for plaintiff's use of the premises than would be the case where the invited use involves less likelihood of danger. Mrs. Long admitted that those persons attending the course had the right to use all of the pool equipment. The extent of the preparation which in the exercise of the property owner's duty of reasonable care should have been made in readying the pool equipment for use by plaintiff is an issue for the jury's determination, and it cannot be said as a matter of law that defendants' duties in this case stopped at a visual inspection.

Mrs. Long testified that the entire lifeguard platform rig was purchased and placed in July of 1963 and that each year the rig was disassembled for winter storage. The foot board was repainted in the spring of 1966 but had not been removed from the rig for such painting process. Mrs. Long testified that Mr. Heavener, in charge of pool maintenance, looked for cracks before painting.

The jury could well find that in view of the great risk of danger involved, there was a lack of reasonable care on defendants' part to permit this foot platform or board to be used solely upon assurances gained from a casual and unprofessional visual inspection.

Under the circumstances and facts in this case the jury could well determine the duty of reasonable care

required defendants to make, or cause to be made by a professional testing firm, sufficient, adequate, and timely physical tests, through use of weights or otherwise, of the board in question to ascertain whether or not it could withstand the stress of the plaintiff's weight of 220 pounds. The testimony of Dr. Parker in this case reveals that the design defect prevented safe use by a 100 pound man flexing his knees, a position which creates the same dynamic conditions as a 200 pound weight being dropped from a height of only three inches above the board, which conditions would raise the stress far over the board's breaking point.

The jury could well find that it was a lack of reasonable care on the part of the defendants to permit this board to be used by plaintiff without subjecting it to tests, through use of weights or otherwise, which would simulate the stress created by a man's diving position and determine the suitability of the board for the use to which it was to be put by those participating in the lifeguard instructions.

What tests, if any, should have been made by defendants to ascertain the board's ability to withstand the stress of a diver; at what time or times and with what frequency those tests should have been made; and whether if made, such tests would have revealed the defect which caused plaintiff's injuries, were all issues for the jury's determination after presentation of plaintiff's and defendants' testimony.

As to defendants' contention that plaintiff assumed the risk and was contributorily negligent, we answer that the evidence fails to establish such defenses either as a matter of law or sufficiently to present a factual issue for the jury's determination. Though plaintiff was told by the instructor he did not have to participate with the other students in diving from the board of the lifeguard platform rig, his voluntary participa-

tion convicts him neither of assumption of risk nor contributory negligence. Defendants argue: "In the case at bar, both the appellant and appellee-Mumaw testified that Mr. Mumaw informed the Appellant that it would not be necessary for him to dive from the lifeguard stand as part of the course. Thus, the Appellant could have refrained from doing so, but rather chose a place of danger in preference to one of perfect safety and by reason of this choice was injured." But by such argument defendants would impose upon plaintiff knowledge of a dangerous condition though they would acquit themselves of such knowledge. If the design defect which made diving from the lifeguard platform rig a danger to the plaintiff was not apparent by a visual inspection to the defendants, certainly it was not visible or apparent to plaintiff. Though one who dives from a lifeguard platform rig necessarily assumes some risk of danger from diving from such high altitude, it cannot logically be said that one of the risks he assumes is that the board will not withstand the stress of his dive but will break upon use and catapult him to the concrete below.

There was no duty upon plaintiff to first test the board in question to ascertain its fitness for use by him; he could properly assume that the pool owner, operator, and manager and instructor-lifeguard had attended to their duties in this respect prior to his use. As stated in the comment to Section 343 of the Restatement of the Law of Torts, 2d: "A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein which is not required of his patrons." Plaintiff's use of the lifeguard platform rig was not only impliedly consented to by the owner, operator and manager of the pool when they agreed to the use of the pool for the giving

of lifeguard lessons by one of their lifeguards, but plaintiff's use and dive from the lifeguard platform rig was with the actual consent and knowledge of the instructor, Sterling Mumaw, defendant's lifeguard, who, while plaintiff was ascending to the rig and was positioning himself on the board, did instruct plaintiff as to his manner of dive.

The evidence as it appears in the present record thus fails to provide any basis to support a finding of assumption of the risk or contributory negligence on the part of plaintiff that would bar his recovery.

The order refusing to remove the compulsory non-suit is therefore reversed, and the case is remanded to the court below for a new trial consistent with this opinion.

SPAULDING, J., concurs in the result.

JACOBS, J., dissents.