587 A.2d 810

**Joanne M. LONSDALE and Robert E. Lonsdale, Her Husband, Appellants,**

**v.**

**JOSEPH HORNE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided March 14, 1991.

---

Paul A. Bell, II, Indiana, for appellants.

Mark Scorpion, Pittsburgh, for appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This case involves an appeal from the February 13, 1990, order of the Court of Common Pleas of Allegheny County (reduced to judgment thereafter) granting a compulsory nonsuit against the Plaintiffs/Appellants, Joanne M. Lonsdale and Robert E. Lonsdale, her husband. We affirm.

> An appellate court must determine the propriety of the trial court granting a nonsuit by a consideration of the facts existing at the time the nonsuit was entered. On an appeal from a compulsory nonsuit, the plaintiff is entitled to all favorable evidence and all reasonable inferences therefrom. Where a compulsory nonsuit is entered at the close of the plaintiff's evidence, the appellate court, upon appeal from a refusal by the trial court to remove the nonsuit, will determine whether plaintiff's evidence was sufficient to present a question for the trier of fact upon which a verdict or finding for the plaintiff could have been based.

9 Standard Pennsylvania Practice, § 72 (1962).

In accordance with the standard of review enunciated, the facts reveal that on February 8, 1985, Ms. Lonsdale, in the

company of her friend and co-employee/teacher (Ms. Helen DeGaetano), traveled to Monroeville, Pennsylvania, to attend a reading conference sponsored by Scotts–Fordsman Publishing Company for teachers of students with reading difficulty.

The conference came to a close at approximately 3:30 p.m., and Ms. Lonsdale and Ms. DeGaetano had pre-planned to do some shopping in the Monroeville Mall at Joseph Horne Company. Prior to embarking on the shopping tour, the two women made their way to Joseph Horne's ladies' room. While in the restroom facilities, Ms. Lonsdale decided to "run hot water" on her hands. As Ms. Lonsdale described it:

> I went over to the sink. I believe it was the second one in as you walk in the door. I turned on the [hot] water faucet [using my right hand.]
>
>        \*     \*     \*     \*     \*     \*
>
> As I was holding my right hand on the faucet, I was warming my left hand up with the hot water. . . . Then I was going to turn around and do it vice versa, but then I never made it because the faucet came around and hit my two fingers[—middle and ring fingers on right hand].

The faucet was of the type that had four prongs projecting from the top of the neck portion of the unit. One would have to turn the handle clockwise and hold it in (the "on") position before water would flow from the spigot; it did so as long as one held the handle in the "on" position. Once the prongs were released, the spring-loaded handle would turn counterclockwise and come to rest in its former position. This automatic action would shut the flow of water from the spigot. As applicable to the case at bar, Ms. Lonsdale described the mechanics of the unit and its impact upon her thusly:

> As I turned it on and was holding it there, waiting for the water to come out, it appeared like the round part, the spigot thing, you know that goes around on it, spun

around and came back very quickly and with extreme force.

* * * * * *

[I]t hit my fingers, which were my two fingers here[—middle and ring fingers], it came back and hit those fingers ..., I wasn't really paying that much attention to see how that came back around because, I mean, all I knew, before I knew it, something had hit me very hard, and I really wasn't studying to see how it did that.

The "recoil" action of the faucet handle was described by Ms. Lonsdale as being "[v]ery, very forceful, very forceful, and very quick[ ]."

When Ms. Lonsdale screamed upon being struck, Ms. DeGaetano went to see what had happened. She did not witness the incident, but, upon noticing Ms. Lonsdale's fingers beginning to swell, a ring was removed from the fourth finger of the right hand. The ring was damaged to the extent that a diamond and emerald had been knocked out of their settings and it was no longer circular in shape.

Ms. Lonsdale decided to inform store personnel of what had happened to prevent a repetition of the incident. Once she reported the matter, Ms. Lonsdale escorted an employee for Joseph Horne to the ladies' room to identify the problem sink; to-wit:

... we tried all the sinks and every sink ... stopped ... on the spigots ..., but the one that hit mine [*sic* ] was—okay, even the cold water was okay on the sink that I was at but the hot water just kept going round and round and round, the spigot part, that part with the sprockets coming out or whatever you call them.

The Horne's employee placed a sign on the "hot" water handle of the sink where Ms. Lonsdale sustained injury; it read: "out of order". Thereafter, Ms. Lonsdale, at the insistence of the store, was transported to Forbes Regional Hospital for x-rays (which indicated no broken bones) and a splint was placed on her right hand. Following this, because of recurring pain in her right hand that precluded her

from grasping objects firmly, Ms. Lonsdale was examined and treated by two physicians (Drs. Pollock and Imbrigilia).

With the institution of suit against Joseph Horne Company alleging negligence, Horne's own orthopedic physician examined Ms. Lonsdale (his testimony at trial was via a videotaped deposition), and his diagnosis was that Ms. Lonsdale was suffering from a symptom termed "atypical carpal tunnel syndrome", a condition in which the tunnel in the wrist is narrowed so as to crowd the median nerve that travels through the tunnel in the wrist and controls the base of the palm, the thumb, the middle and half of the ring finger.

Based on information received from Ms. Lonsdale and his experience, he opined that, within a reasonable degree of medical certainty, Ms. Lonsdale's atypical carpal tunnel syndrome was the result of the February 8, 1985, injury.

Following the presentment of Ms. Lonsdale's case, the Defendant/Joseph Horne Company moved for a compulsory nonsuit premised on the ground that the Plaintiff/Ms. Lonsdale had failed to make out a *prima facie* case of negligence. The Plaintiff's attorney countered that "we are almost in a *res ipsa loquitur* type of a situation" in that the negligence of Joseph Horne Company is the "most probable explanation", in allowing the faucet to become defective, for the Plaintiff to sustain injury. Accordingly, counsel for the Plaintiff argued that his client was entitled to have the case go to the jury for resolution.

The trial court ruled in favor of the Defendant's motion for a compulsory nonsuit. A motion to withdraw the nonsuit was filed and denied.[1] This appeal followed and raises three issues for our consideration. The first reads:

Did the Lower Court err in entering a compulsory nonsuit against the Appellants despite the evidence presented concerning the issue of negligence?

1. The filing of the motion to withdraw the nonsuit was a condition precedent to perfecting an appeal to this Court. See, *e.g., Crawford v. Com.,* 125 Pa.Cmwlth. 85, 556 A.2d 547 (1989); *Conie v. Barnett's Bootery, Inc.,* 320 Pa.Super. 412, 467 A.2d 391 (1983).

■ No one disputes that Ms. Lonsdale was a business invitee,[2] and, as such, was required to have the highest degree of care exercised toward her by Joseph Horne Company/possessor of land. See *Crotty v. Reading Industries, Inc.*, 237 Pa.Super. 1, 345 A.2d 259, 262 (1975).

The Restatement (Second) of Torts, § 343 defines a breach of that duty of care owed a business invitee by a possessor of land as existing if, but only if, the property owner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343 of the Restatement (Second) of Torts has been cited with approval in this Commonwealth. See, *e.g.*, *Winkler v. Seven Springs Farm*, 240 Pa.Super. 641, 645–46, 359 A.2d 440 (1976).

It is apparent from the criteria set forth in Section 343, that in order to hold the Defendant accountable for the injuries sustained by the Plaintiff, Ms. Lonsdale had to show that the Defendant either knew or, by the exercise of reasonable care, should have known that one of the seven to eight sinks in the ladies' room would malfunction and was likely to cause harm. Prior to resolving this matter, several principles of law need to be recounted; namely:

A possessor of land is not an insurer of his business invitees, and plaintiff's evidence must establish some degree of negligence on defendant's part in order to recover. Furthermore, a jury cannot be permitted to return a verdict based on speculation and not supported by adequate evidence or reasonable inferences. "We

2. A business invitee is a person who is entitled or permitted to enter real property of another for a purpose directly or indirectly connected with business dealings between the two. *Kimble v. Mackintosh Hemphill Co.*, 359 Pa. 461, 59 A.2d 68, 78 (1948).

have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based." Circumstantial evidence is adequate to prove the plaintiff's case and "[i]t is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability ...", however, the mere happening of an accident is no evidence of negligence and does not raise a presumption of negligence.

*Winkler,* supra, 240 Pa.Super. at 646–47, 359 A.2d at 442–43 (Citations omitted).

At trial, the Plaintiff failed to submit any evidence that the Defendant had knowledge that the faucet handle was defective and involved an unreasonable risk of harm to the user. On the contrary, the Plaintiff testified on direct and cross-examination that she did not notice water dripping from any of the faucets upon her entry into the ladies' room. She did not detect any particular problem with the faucet she used prior to turning its handle. In fact, to the question on cross-examination: "When you initially turned it [faucet handle] on, did water start to come out?" the Plaintiff indicated in the affirmative. It was only after water began flowing from the spigot that the Plaintiff observed the handle, fixed within her grasp, recoil "very quickly" in a counterclockwise motion and resulted in the four-pronged handle to turn freely thereafter when examined in the company of a Horne's employee, who saw fit to place an "out of order" sign on the faucet in question.

Additionally, Ms. DeGaetano, albeit recalling seeing water "dripping" from the "ring underneath" and "down under" the four-pronged handle of some of the sinks, "did not know" whether the unit utilized by the Plaintiff was leaking water prior to being used.

Lastly, both the Plaintiff and Ms. DeGaetano testified that on no prior visit to the Horne's ladies' room had they encountered any problem with the faucets.

Taking the testimony of Ms. Lonsdale and Ms. DeGaetano, they being the only witnesses to testimony on the question of liability, and viewing it in its most favorable light, we have the absence of any showing that any allegedly dangerous condition of the faucet handle could or should have been uncovered by a proper or reasonable inspection.

> The duty of inspection distinguishes the obligation of the possessor owed to the business visitors from the obligation owed to the licensees. A visual inspection has long been required for the protection of business visitors; ... and indeed, the duty *may* go beyond a mere visual inspection.

*Crotty,* supra, 237 Pa.Super. at ——, 345 A.2d at 262 (Citations omitted; emphasis added). As to when a visual inspection is superseded by a more intense examination by the possessor of land, we take some guidance from this Court's decision in *Starke v. Long,* 221 Pa.Super. 338, 292 A.2d 440 (1972).

In *Starke,* this Court reversed the order of the trial court refusing to remove a compulsory nonsuit in a case in which the Plaintiff was injured when a plywood diving board broke under his weight and caused him to fall to the concrete pool apron below.

Looking to Section 343 of the Restatement (Second) of Torts, this Court held that, in view of the great risk of danger involved in platform diving, whether the Defendant's duty stopped at a visual inspection or extended to subject the platform to tests (as to the type, the frequency and whether the test(s) would have revealed the defect) were all questions for the jury's determination. As to when the line from visual inspection to testing of a product is crossed, we wrote:

> The extent of care required to be exercised by an owner or possessor of land is at all times commensurate with the circumstances surrounding the use to which he has invited his property to be used. The comment to the above-quoted Section 343 of the Restatement of the Law of

Torts, 2d, notes: "In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors. *On the other hand, one entering a store, theater, office building, or hotel, is entitled to expect that his host will make far greater preparation to secure the safety of his patrons than a householder will make for his social or even his business visitors.*" (emphasis supplied)

Certainly the owner and operator of a pool who permits plaintiff to be invited on his property and to participate in lifeguard lessons at his pool is under a duty to make a greater preparation for plaintiff's use of the premises than would be the case where the invited use involves less likelihood of danger.

221 Pa.Super. at 341–42, 292 A.2d at 443. Further, as is stated in the Comment to Section 343 of the Restatement (Second) of Torts: "A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and appliances provided thereon which is not required of his patrons." *Id.*, 221 Pa.Superior Ct. at 344, 292 A.2d at 444.

We in no sense equate the danger associated with platform diving with the rather innocuous practice of turning a faucet handle to wash one's hands. As such, we do not deem it a jury question to determine whether tests, beyond a mere visual inspection, of the faucet handle(s) located in Horne's ladies' room were required to satisfy the property owner's duty of care toward business invitees. Contrast *Winkler*, supra, with *Starke*, supra. The fact that neither Ms. Lonsdale nor Ms. DeGaetano was able to detect any deficiencies with the faucets located in the ladies' restroom, it seems reasonable to conclude that a visual inspection by Horne's personnel would have disclosed nothing more in-

sightful that could have avoided the injury to the Plaintiff's right hand.

Stated differently, no evidence whatsoever was introduced to show that the "recoiling" of the faucet handle was caused by some discoverable condition or structural defect of which the Defendant could have been aware had it performed an inspection. *Winkler,* supra; *Starke,* supra. Since there was an absence of evidence to indicate that the faucet handle was in any way defective or that it had ever prematurely "recoiled" prior to Ms. Lonsdale's use of it, we are loathe to say that the condition of the faucet handle would support an inference of negligence on the part of the Defendant. *Winkler,* supra.

In her second claim on appeal, the Plaintiff argues: The Evidence Presented by the Appellants was Sufficient to Invoke the Doctrine of Res Ipsa Loquitur and the Burden of Proof Should Have Been Shifted to the Appellee to Prove that it was not Negligent.

In *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974), the Pennsylvania Supreme Court adopted Section 328D of the Restatement (Second) of Torts, titled Res Ipsa Loquitur, which provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

The Restatement makes clear that to reach the jury, the Plaintiff must by a preponderance of the evidence prove all of the elements enumerated in subsection (1). *Hollywood Shop, Inc. v. Pa. Gas & Water Co.,* 270 Pa.Super. 245, 411 A.2d 509 (1979).

In the case *sub judice,* the trial court ruled, without elaboration, that the Plaintiff did not establish a *prima facie* case of negligence. We wish to expound on the basis for affirming the nonsuit, and we begin with the Plaintiff's failure to fulfill the requirement of Section 328D(1)(b) (sufficiently eliminating other responsible causes).

Although the Plaintiff's testimony sufficiently eliminates her own conduct as possibly being a responsible cause of this accident,[3] the same cannot be said with eliminating third persons as a responsible cause of this accident. Contrast *Smith v. City of Chester,* 357 Pa.Super. 24, 515 A.2d 303 (1986), wherein this Court observed on this point that:

> It is not necessary that appellant exclude all other possible causes of the accident beyond a reasonable doubt. All that is required is that appellant present a case from which a jury may reasonably conclude that the negligence was, more probably than not, that of the defendant. Restatement (Second) of Torts § 328 D comment f. We find from our review of the record that appellant has met the threshold requirements of section 328 D(1)(b) in that the jury could reasonably conclude that it was more likely than not that appellant's injuries were the result of appellee's negligence. *Lanza v. Poretti, supra [537 F.Supp. 777 (1982)]. There was substantial evidence presented at trial that, if found credible,*

---

3. For example, the Plaintiff testified that she looked at the faucets in the ladies' room at the Joseph Horne Company and saw nothing unusual. Ms. DeGaetano, who was present in the ladies' room at the same time, echoed the Plaintiff's observations. Thus, there was no evidence presented which would lead one to believe that the Plaintiff was on notice that the faucet handle was broken or about to break upon use by Ms. Lonsdale. See *Smith v. City of Chester,* 357 Pa.Super. 24, 515 A.2d 303, 305 (1986). Also, there was no testimony elicited from Ms. Lonsdale which would indicate that she used excessive force in turning the faucet handle leading to its breaking.

*would eliminate appellant's employer as a possible cause of the accident.*

357 Pa.Super. at 28, 515 A.2d at 305–06 (Emphasis added; footnote omitted).

Instantly, unlike *Smith,* there was no evidence presented at trial that, if found credible, would eliminate third parties (*e.g.,* manufacturer and other store patrons) as possible causes of the accident. Furthermore, common human experience suggests some explanations for a faucet handle breaking (excessive, inordinate and improper use) which do not involve negligence. The totality of these circumstances cannot be viewed to raise an inference of negligence, see *Winkler,* supra, and, as it is still the Plaintiff's responsibility to advance some evidence to buttress her allegation, we find no justification for reversing the trial court's ruling on the second claim of error raised on appeal.[4] *Paul v. Hess Bros.,* 226 Pa.Super. 92, 312 A.2d 65 (1973).

The last of the Plaintiff's contentions reads:

The Appellee, by Presenting Evidence During the Appellants' Case, Waived its Right to the Entry of a Nonsuit.

More particularly, the Plaintiff urges that the nonsuit was granted improperly because the Defendant, during her case-in-chief, presented evidence to the jury in the form of: (a) cross-examination that presented a defense; (b) exhibiting a

---

**4.** We would add, as an aside, a response to the Defendant's erroneous assertion that, absent the production of expert testimony to establish that an accident is the type which does not generally occur absent some negligence, a case for the use of *res ipsa loquitur* is not present. As stated by this Court in *Smith v. City of Chester,* 357 Pa.Super. 24, 515 A.2d 303, 305 (1986), "'a *res ipsa loquitor* [*sic*] charge is appropriate where ... the plaintiff brings no evidence of specific acts of negligence....'" (Citation omitted). The presumption of negligence may arise from the entire absence of proof, or the want of clear and indubitable proof, of the cause of the accident. Therefore, a Plaintiff must rely on the *res ipsa loquitur* inference alone. See *Hollywood Shop, Inc. v. Pa. Gas & Water Co.,* 270 Pa.Super. 245, 411 A.2d 509, 512, 513 (1979).

It is not that expert testimony is not preferable to shed light on a matter that is beyond the average layman to comprehend. However, such testimony is not the linchpin for the use of an evidentiary rule of law of which *res ipsa loquitur* is one such instrument available to a Plaintiff to aid in proving his/her case. See *Smith,* supra.

faucet unit with such frequency that it "became part of the case"; and (c) showing photographs of the restroom which, considered separately or as a whole, constituted the introduction of evidence precluding the entry of a nonsuit.

It is true that a Defendant's right to request a nonsuit is premised upon his/her offering no evidence, and a trial court cannot grant a nonsuit after the introduction of evidence by the Defendant. *F.W. Wise Gas Co. v. Beech Creek Railroad Co.*, 437 Pa. 389, 263 A.2d 313, 315 (1970). However, we find that neither the faucet nor the photographs were ever "admitted" into evidence to become a formal part of the case, a fact which is conceded by the Plaintiff in her appellate brief at 25. Yet, she persists in the belief that "these items, in fact if not in law, *became evidence in support of the Appellee's case." Id.* (Emphasis added). We disagree.

To begin with, the Defendant attempted to utilize a faucet to reconstruct the manner in which the Plaintiff gripped the original unit (purportedly still in use) and to allow the jury to visualize the physical characteristics of the object.

We find that the testimony elicited from Ms. Lonsdale, when viewed in conjunction with the presentment of photographs of the supposed ladies' room, was not helpful to the Defendant's case inasmuch as neither the unit nor the photos taken were able to be identified as reproductions of the "original(s)" they were intended to depict. See Reproduced Record at 220, 221. Therefore, we are in a quandary as to how either item became "evidence" for the defense when they could not be identified as depicting the original item(s) by Ms. Lonsdale. Id.

With regard to the use of Ms. Lonsdale's March 3, 1988, deposition to contradict her trial testimony in which she denied having soap in her hands either before or after warming her hands under the tap water, we find this line of questioning (see id. at 225–226) by the Defendant did not exceed proper bounds of cross-examination so as to elicit matters constituting a defense to the cause of action. Con-

trast *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 744 (1978). More importantly, there is no indication from the trial court that any of the complained-of matters recited by the Plaintiff were relied upon, either singularly or in concert, as the *basis* for the entry of the nonsuit. Contrast *Highland Tank and Manufacturing Co. v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1967) (Judgment of nonsuit reversed where exhibits, introduced by the Appellee following presentation of the Appellant's case, were used in connection with cross-examination of the Appellant's witnesses *and was considered by the trial court in granting the nonsuit*); *Smith v. Standard Steel Car Co.*, 262 Pa. 550, 106 A. 102, 104 (1919) (Judgment reversed where the Defendant improperly cross-examined the Plaintiff's witness to show a defense to the action, "and evidence so elicited cannot be made the basis of a nonsuit."); *Catanzaro v. Pa. R.R. Co.*, 230 Pa. 305, 79 A. 624, 625–26 (1911) (Judgment reversed where trial court improperly, and against objection, allowed the Defendant to introduce documents into evidence following cross-examination of the Plaintiff's witness as an attempt to introduce a matter of defense on cross-examination; the trial court was "influenced solely by the evidence elicited on cross-examination ... [and o]n no other ground was the nonsuit asked [and rested].").

For the reasons herein stated, we affirm the actions of the trial court entering an order (ultimately reduced to judgment) of nonsuit in favor of the Defendant and against the Plaintiffs.

Affirmed.