## Pribish v. Mercer County Agricultural Society

C.P. of Mercer County, no. 1091 C.D. 1990.

*Susan A. Ferguson,* for plaintiff.
*John O. Dodick,* for defendant.

DOBSON, *J.,* March 28, 1996—The matter before this court for disposition is plaintiff's motion for post-trial relief requesting a new trial. This case ended with the entry of a compulsory nonsuit against the plaintiff. The sole issue is whether or not the court erred in granting the nonsuit. The facts adduced at trial are as follows:

The plaintiff, Eugene Pribish, founded Constant Communications Inc. in 1968. The nature of his business was installing sound systems in churches, hospitals, schools and fairs. The plaintiff serviced eight or nine fairs, at that time, and did all the installation work himself. The plaintiff first became acquainted with the defendant, The Great Stoneboro Fair, in 1977 or 1978 when he entered into a contract to install speakers, on poles, for the fair. Thereafter, the plaintiff entered into similar contracts with the defendant until 1988. In 1985 or 1986, the plaintiff had a conversation with Bill Ibbs, who was at that time the president of the Stoneboro Fair. The plaintiff expressed his concern over the integrity of two of the poles, on which he installed the speakers. The plaintiff testified that Mr. Ibbs had guaranteed him that all the fair's poles were "checked out" by a maintenance man. (T.T. I at 33, 34.) Normally, the plaintiff would attach speakers to seven or eight poles throughout the fairgrounds. The plaintiff's general procedure was to drive his truck over to the pole, visually inspect the pole, push the pole to make sure it was firm, and then lean his ladder against the pole. The

plaintiff also used a safety belt and harness, linesman's boots, and a hard hat, when climbing the pole. The plaintiff would fasten the linesman's belt around the top of the utility pole, and then using a rope he had attached to the belt, he would pull the speaker up. On August 29, 1988, the date of the accident, the plaintiff was following these procedures. The pole he was climbing at the time of his fall was located next to the racetrack. As the plaintiff was near the top of the pole and about to attach the speaker, the pole broke and the plaintiff fell onto a gravel racetrack 28 to 30 feet below. As a result of the accident, the plaintiff received severe injuries to his head, face, right shoulder, right hand and back. Immediately following the accident, plaintiff examined the pole and discovered that the inside of the pole was dry rotted. The plaintiff subsequently wrote a letter to one of the fair representatives describing the condition of the pole. In the letter, the plaintiff stated that the inside of the pole was rotted out just below ground level.

A witness, called by the plaintiff, Clinton Barnes testified that he had been hired by the Stoneboro Fair, as a general laborer, in 1978 or 1979. Barnes testified that part of his duties included inspection of the utility pole. Barnes testified that he had no pole inspection training, and never received any instructions or guidelines concerning pole inspection. Barnes' inspection of the poles included visually inspecting the poles, as well as testing the poles by running a weed eater against them. If the weed eater caused any wood from the pole to break off, this was a good indication of dry rot. In 1986, Barnes was promoted to grounds foreman. Prior to that time, he testified that he personally in-

spected the poles twice a year, mid-summer, and two weeks before the fair. After his promotion, Barnes testified that he examined the poles once during the year. Barnes testified that during his employment, and up until the time of the accident, a few poles, possibly as many as three, had been replaced due to dry rotting. Barnes stated that he had not inspected the pole in 1988, but that one of the grounds workers would have cut around it within two weeks of the accident. Barnes was asked if he ever stuck a knife into a pole, or dug down into the ground to inspect the in-ground part of the pole, he answered that he had not. Barnes also stated that he inspected the pole after the accident but couldn't remember seeing any defect on the outside. He further stated that the poles that had been replaced in the past had all looked defective on the outside.

"[A] compulsory nonsuit can be entered only when it is clear that the plaintiff has failed to establish, by a fair preponderance of the evidence, the claim for which he brought suit." *Shirley v. Clark,* 441 Pa. 508, 510, 271 A.2d 868, 869 (1970). "An order granting a nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established." *Ford v. Jeffries,* 474 Pa. 588, 591-92, 379 A.2d 111, 112 (1977). Thus, the entry of a compulsory nonsuit is proper where "[t]he [plaintiff's] testimony, viewed in the light most favorable to [the plaintiff], is devoid of proof of negligence." *Zager v. Pittsburgh Railways Company,* 401 Pa. 516, 518, 165 A.2d 30, 31 (1960).

The question of liability in this case is controlled by section 343 of the Restatement (Second) of Torts, which provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

In this case, it is not disputed that the plaintiff was an invitee of defendant and on land possessed by the defendant.

What was disputed was whether the defendant knew or, by the exercise of reasonable care, should have known that the utility pole was dry rotted and, therefore, presented a danger.

Plaintiff's position at trial was that the defendant failed to use reasonable care by not conducting a proper inspection of the pole. Plaintiff, however, presented no evidence on what would constitute a proper inspection.

A nonsuit was granted on the basis expert testimony was needed to establish what a reasonable inspection would entail to discover the dry rot.

The present case is analogous to *Miller v. Hickey,* 368 Pa. 317, 81 A.2d 910 (1951). In *Miller,* the employee of an independent contractor was injured when he fell from a fire escape which he was cleaning. The injury occurred when a railing, which was corroded on the

inside only, gave way. The defect was a latent defect, of which neither the plaintiff nor defendant had any knowledge. *Id.* at 320-21, 81 A.2d at 912.

No testimony was present by the plaintiff regarding what a reasonable inspection would entail or that it would have disclosed the problem.

The defendant in *Miller* presented the testimony of a maintenance inspector, Blake, who had visually examined the fire escape four months and one month before the accident, and found no rust on the piece of railing that had broken off. *Id.* at 322-23, 81 A.2d at 913.

The Pennsylvania Supreme Court noted that the plaintiff had not proven "that the inspection made by Blake was not a proper one or was not one that was customary in the trade, or that a proper inspection would have disclosed the dangerous or defective condition of the part of the fire escape which broke." *Id.* The Pennsylvania Supreme Court held defendant's motion for judgment n.o.v. should be granted. The court stated plaintiff "failed to prove that the defect could or should have been discovered by a proper or reasonable inspection." *Id.* at 325, 81 A.2d at 914.

Similarly, in this case the pole contained a latent defect unknown to the plaintiff or defendant. Like the railing in *Miller,* the utility pole had been visually inspected prior to the accident, and no defect had been observed. Plaintiff also failed to present any evidence that the inspection performed by the defendant was not a proper one or present evidence that the defect could have been discovered by another type of inspection.

Plaintiff relies on *Greco v. 7-Up Bottling Co. of Pittsburgh,* 401 Pa. 434, 165 A.2d 5 (1960). In that case, a painter brought an action against a landlord and tenants

of a commercial building for injuries he received when he was struck by a falling piece of rotted window frame. Evidence was presented showing "the rotted condition of the window frame could not have been discovered by a visual inspection; the condition could have been readily discovered by manual tapping on the frame whereby both tactiley and aurally its condition would [have been discovered]." *Id.* at 445, 165 A.2d at 10. In addition, "there (was) no evidence whatsoever that [the landlord], at any time inspected the condition of the window frames either from within or without the building." *Id.*

On the basis of these facts, the Supreme Court held it was for the jury to decide if the landlord's failure to visually inspect was unreasonable and to decide if the exercise of reasonable care required an inspection by tapping on the windows. *Greco v. 7-Up Bottling Co. of Pittsburgh, supra.*

The facts in this case differ from those in *Greco* in two critical ways. The first is there was a visual inspection. The second is there was no evidence presented as to what type of inspection would have uncovered the defect. The only question before the jury, therefore, was whether the inspection utilized was unreasonable.

In *Lonsdale v. Joseph Horne Co.,* 403 Pa. Super. 12, 587 A.2d 810 (1991), the Superior Court held, "A possessor of land is not an insurer of his business invitees, and plaintiff's evidence must establish some degree of negligence on defendant's part in order to recover. Furthermore, a jury cannot be permitted to return a verdict based on speculation and not supported by adequate evidence or reasonable inferences. 'We have said many times that the jury may not be permitted

to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based.' Circumstantial evidence is adequate to prove the plaintiff's case and '[i]t is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability . . .' however, the mere happening of an accident is no evidence of negligence and does not raise a presumption of negligence." *Id.* at 18-19, 587 A.2d at 813. (citation omitted)

In the present case the plaintiff presented no evidence which showed what a reasonable inspection was. The jury would have had to specu4ubject matter of the inquiry involves the proper inspection of a wooden utility pole. The determination of the proper standard for such an inspection clearly involves knowledge not common to the ordinary lay person. Although the plaintiff presented possible tests, including sticking a knife into the pole, and conducting a core drilling, it was never established that any of these tests constituted a reasonable inspection or that they would have disclosed the defect. Plaintiff also never presented evidence which showed that defendant's visual inspection of the pole deviated from the requisite standard of care. Without such evidence, the jury had no standard upon which to base its decision. Therefore, a compulsory nonsuit was properly granted.

## ORDER

And now, March 28, 1996, plaintiff's motion for a new trial is denied.