**Pattie S. DIVITTORIO; Angelo Divittorio, husband and wife, Appellants,**

v.

**UNITED STATES of America.**

No. 02–1483.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 4, 2003.

Decided March 26, 2003.

---

Before ROTH, BARRY, and FUENTES, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Appellants Pattie and Angelo DiVittorio brought suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, alleging injuries to Mrs. DiVittorio that resulted when an elevator in which she was riding allegedly plummeted from between the first and second floors to the basement of the Post Office building in Johnstown, Pennsylvania. Mr. DiVittorio brought a claim for loss of consortium. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm the District Court's grant of summary judgment in favor of the United States.

I.

On April 14, 1997, Mrs. DiVittorio entered the elevator of the Post Office building and began her ascent to the second floor. The elevator stopped, a fire alarm rang, a red light flashed, and the elevator descended at a faster than normal rate to the basement. Mrs. DiVittorio bumped her head and bruised her ankle and elbow inside the elevator. She tried to use the emergency telephone, but no one answered. She pushed the elevator doors open and entered the basement, which was poorly lit. Unable to exit the building by climbing the stairs to the first floor, she eventually found her way out through a basement door under a lighted exit sign, tripping on the doorstep in the process.

The fire alarm was most likely triggered by a sensor in the first-floor lobby. Dur-

ing a fire alarm, the elevator is designed to proceed to the safest floor at a normal speed and then not operate until its motor is reset. If the elevator descends at an excessive speed, a mechanical speed governor will engage to stop the car. If the mechanical speed governor malfunctions and the elevator runs past the basement floor, a backup safety device called a mechanical or bottom limit switch activates to stop the car. If both of these features malfunction, the elevator descends into the pit and strikes the buffer assembly, which is a large spring designed to cushion the impact.

After Mrs. DiVittorio exited the basement, she returned to the Post Office and told a clerk what had happened. Postmaster Michael Hudak was heard to blame the incident on a sensor that malfunctioned in that it was triggered by cigarette smoke. Hudak found the elevator in the basement at floor level, reset its motor, tested the elevator, and found that it operated properly. The next day, Hudak and two other employees tested the elevator during a fire alarm, and confirmed that it functioned properly. The same day, an independent contractor, Eastern Elevator Company, also inspected the elevator. Eastern Elevator found no evidence that the elevator had plummeted to the basement the day before. It reported that all safety features worked, including the emergency telephone. It found that although the mechanical limit switch was improperly positioned, the buffer assembly showed no evidence of impact, and it concluded that the elevator had not plummeted to the basement.

The elevator passed regular monthly and semi-annual inspections from December 1993 through May 1997. There were no previous reported incidents of the elevator falling.

## II.

We exercise plenary review of the District Court's grant of summary judgment. *Smathers v. Multi–Tool, Inc/Multi–Plastics, Inc.*, 298 F.3d 191, 194 (3d Cir.2002). It is well understood that in order to successfully defend against a motion for summary judgment, a plaintiff must point to material facts creating a genuine issue as to each element of his or her prima facie case. The plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In a negligence action under the FTCA, a plaintiff must show that the government breached a duty of care, and that this breach caused his or her actual injury. *See Morena v. Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983).

Mrs. DiVittorio brought her negligence action under two theories. First, she alleged that the government negligently permitted the elevator to operate in a dangerous condition. Second, she alleged that the fact that the elevator plummeted is sufficient to establish negligence under the theory of res ipsa loquitur. The parties agree that Pennsylvania law governs this action.

With regard to her theory based on government negligence, Mrs. DiVittorio has not challenged the government's evidence that at the time of the accident, it had no reason to suspect that there was anything wrong with the elevator—there had been no previous complaints, and the elevator had passed regular safety inspections. Neither did she introduce evidence of any specific negligence by government

employees, but for which her injuries would not have occurred.

Mrs. DiVittorio nonetheless contends that she presented sufficient evidence of negligence by virtue of (1) her testimony that Postmaster Hudak admitted that the elevator's fire sensor malfunctioned; (2) Elaine Boxler's statement that cigarette smoking in the lobby had previously caused the fire alarm to go off, causing the elevator to go to the basement; (3) Brenda Bracken's statement that a repairman was trying to fix the emergency telephone system three days before Mrs. DiVittorio's alleged accident; (4) Mrs. DiVittorio's expert Richard Hughes's statement that a misplacement of the mechanical limit switch was the "competent producing cause" of the elevator's abrupt stop; and (5) Mr. Hughes's statements that Mrs. DiVittorio's claimed inability to operate the emergency telephone system and her claim that the basement was poorly lit indicate noncompliance by the government with local codes.

■ The above evidence is wholly insufficient to raise a genuine issue of fact as to whether the government negligently operated the elevator. First, there is no dispute that the sensor triggered an alarm, which caused the elevator to descend to the basement. Hudak's alleged statement blaming the elevator's behavior on a sensor that triggered an alarm in the presence of cigarette smoke is nothing more than an admission that the sensor was sensitive and hardly evidence of the government's negligence, for obvious public safety reasons.

Second, the District Court assumed, and we will assume, that Mrs. DiVittorio's testimony that the elevator descended to the basement at faster than normal speed created a genuine issue of fact as to whether the elevator did, in fact, descend at faster than normal speed. Mr. Hughes's conclu-

sory finding that the misplacement of the mechanical limit switch caused the elevator to stop abruptly, however, does not raise a genuine issue as to negligence. Hughes did not even attempt to explain how any misplacement of the switch could have caused Mrs. DiVittorio's injuries given the results of Eastern Elevator's physical investigation, which found no evidence that that backup safety device had been activated or that the buffer assembly had been impacted. Since Hughes did not enter the basement or examine the elevator's safety features himself, Eastern Elevator's findings are unrebutted and his opinion is based simply on conjecture.

Mrs. DiVittorio's argument that the poor lighting in the basement and a faulty emergency telephone violated local codes similarly fails. First, any putative code violations are immaterial to her claim that she was injured when the elevator hit the buffer assembly in the basement. Second, her testimony that the basement was dimly lit is weakened by her admission that she exited the basement under a lighted exit sign. Third, Hughes, on whose opinion this argument is based, never saw the basement and *a fortiori* never saw the lighting. Fourth, the allegation that a repairman was trying to fix the emergency telephone in the elevator three days before the incident is of little if any weight in the face of Eastern Elevator's finding that the emergency telephone worked perfectly just the day afterward. Even assuming that the repairman said what Brenda Bracken claims he said, the only reasonable inference is that the telephone had been fixed by the time of Mrs. DiVittorio's alleged injury.

Finally, Mrs. DiVittorio concedes that such local codes do not apply to the Postal Service. In *Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601 (1985), the court admitted evidence that scaffolding that comported with the generally accepted trade

standards did not comport with federal standards, even though the defendants were not legally required to adhere to the federal standards. There, however, the evidence was relevant to challenge the generally accepted trade standards themselves as negligent. *Id.* at 603–04. Here, in contrast, Mrs. DiVittorio was attempting to use local codes to suggest that the government's noncompliance with them was negligent. This evidence, however, did not raise a genuine issue for trial as to the government's negligence.

The District Court correctly concluded, therefore, that there was no issue of material fact as to whether the government negligently permitted the elevator to operate in a dangerous condition, causing Mrs. DiVittorio's injuries. The District Court also correctly concluded that the only way for Mrs. DiVittorio to survive summary judgment would be by virtue of res ipsa loquitur. Under this doctrine, a court may infer that harm suffered by a plaintiff is caused by negligence of the defendant when:

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94, 100 (1974).

The District Court found that Mrs. DiVittorio satisfied the first and third of these requirements: the sudden fall of an elevator is exactly the sort of event that does not ordinarily occur in the absence of negligence, *see Tait v. Armor Elevator Co.,* 958 F.2d 563, 572 (3d Cir.1992), and the Post Office owed a duty to Mrs. DiVittorio, as a business invitee, to exercise reasonable care to protect her from dangers such as the plummeting of an eleva-

tor, *see Martino v. Great Atlantic & Pacific Tea Co.,* 419 Pa. 229, 213 A.2d 608 (1965). The Court also found, however, that Mrs. DiVittorio failed to satisfy the second requirement because she failed to introduce evidence eliminating other responsible causes of the incident. We agree. Although it was not necessary for Mrs. DiVittorio to exclude all other possible causes of the incident, she was required to produce evidence from which a finder of fact might reasonably conclude that the government was, more probably than not, negligent. *See Micciche,* 645 A.2d at 281; *Lonsdale v. Joseph Horne Co.,* 403 Pa.Super. 12, 587 A.2d 810, 815–16 (1991) (affirming trial court's grant of compulsory nonsuit against plaintiff, finding doctrine of res ipsa loquitur inapplicable where plaintiff had not eliminated third person as possible cause of accident). She, quite simply, did not do so.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.